Raymond J. COMPTON, Regional Director of the Twenty-fourth Region of the National Labor Relations Board, For and On Behalf of the NATIONAL LABOR RELATIONS BOARD, Plaintiffs,

v.

PUERTO RICO NEWSPAPER GUILD, LOCAL 225, Defendants.

Civ. No. 263–72.

United States District Court,
D. Puerto Rico.

April 6, 1972.

Vincent M. Rotolo and Martin Arlook, Hato Rey, P. R., for plaintiffs.

Francisco Aponte Perez, George Weasler, Santurce, P. R., Alfredo Nazario, Hato Rey, P. R., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

TOLEDO, District Judge.

This cause came on to be heard upon the verified petition filed by Raymond J. Compton, Regional Director of the

24th Region of the National Labor Relations Board (hereinafter called the Board), on March 16, 1972, seeking a temporary injunction pursuant to Section 10(j) of the National Labor Relations Act, as amended.[1] Title 29, United States Code, Section 160(j), (hereinafter called the Act), pending the final disposition of the matters involved herein pending before the Board. On March 17, 1972, this Court issued an order to show cause why injunctive relief should not be granted as prayed in said verified petition. An answer to said verified petition was filed by the respondents on March 23, 1972. Hearings on the issues raised by the verified petition and answer were duly held on April 3, 4 and 5, 1972. All parties were afforded full opportunity to present briefs, to be heard, to examine and cross-examine witnesses, to present evidence pertinent and relevant to the issues, and to argue on the evidence and the law. After having fully considered the verified petition, respondents' answer, the briefs and arguments of counsel, the evidence admitted during the hearing and the entire record in the case, the Court makes the following:

## FINDINGS OF FACT

1. Petitioner is Regional Director of the 24th Region of the Board, an agency of the United States of America, and files this petition for and on behalf of the Board.

2. On February 11, 1972, El Mundo, Inc. (hereinafter at times called the Company) pursuant to provisions of the Act, filed a charge with the Board alleging that respondents Puerto Rico Newspaper Guild Local 225, affiliated with The Newspaper Guild, AFL–CIO, also known as Unión de Periodistas Artes Gráficas y Ramas Anexas, and respondent, The Newspaper Guild, AFL–CIO (herein collectively referred to as Respondents) have engaged in, and are engaging in, unfair labor practices within the meaning of Section 8(b) (1) (A) of the Act.[2]

3. The aforesaid charge was referred to petitioner as Regional Director of the 24th Region of the Board.

4. The Company is a Puerto Rican corporation engaged in the preparation, publication, sale and distribution of a daily newspaper known as "El Mundo". Its principal office and place of business is located at Hato Rey, Puerto Rico. In the course and conduct of its business operations it causes materials used in its business, consisting of ink, newsprint, machinery, and machine parts, to be purchased, transported and delivered from and thru states of the United States to its plant at Hato Rey, Puerto Rico. The value of these materials is in excess of $50,000 annually. It also subscribes to and receives wire services from the International Newspaper Service, publishes nationally syndicated columns and carries advertisements of nationally known products produced by firms located in the Continental United States. Its gross annual income is in

1. Section 10(j) of the National Labor Relations Act, as amended, Title 29, United States Code, S. 160(j), provides as follows:
   "(j) The Board shall have power, upon issuance of a complaint as provided in subsection (b) of this section charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, * * * within any district wherein such person resides or transacts business, for appropriate temporary relief or restraining order. Upon the filing of any such petition the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper."

2. Section 8(b) (1) (A) of the National Labor Relations Act, as amended, Title 29, United States Code, Section 158(b) (1) (A), provides in the pertinent part as follows:
   "(b) It shall be an unfair labor practice for a labor organization or its agents—
   (1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title: * * *."

excess of $200,000. The Company is now, and has been at all times material herein, engaged in commerce within the meaning of Section 2(6) and (7) of the Act.[3]

5. Respondents are, and at all times material herein have been, labor organizations and are engaged within this judicial district in transacting business and in promoting and protecting the interests of their employee members.

6. On or about February 9, 1972, certain employees of the Company employed at its Hato Rey plant stopped work concertedly and went out on strike and since said date have engaged in and are engaging in strike and picketing activities at the Company's plant in Hato Rey, Puerto Rico, Respondents have at all times material herein, been in active charge and control of said strike and picketing activities. Said picketing activities have at all times been supervised or managed by officers and other agents of the Respondents, including, inter alia,

Alfredo González, Jr., President of Respondent Puerto Rico Newspaper Guild, Local 225

Bienvenido Ortiz Otero, Vice President of Respondent Puerto Rico Newspaper Guild, Local 225

Angel Báez, General Delegate and Representative of Respondent Puerto Rico Newspaper Guild, Local 225

Victor Morales, Shop Delegate of Respondent Puerto Rico Newspaper Guild, Local 225

Harry McCormick, International Representative of Respondent The Newspaper Guild, AFL–CIO

7. Since on or about February 10, 1972, the Respondents through their officers, agents and representatives have on various occasions,[4] in connection with and in the context of said strike and picketing activities, restrained and coerced employees in the exercise of the rights guaranteed them in Section 7 of the Act,[5] and supervisors and managerial employees in the presence of other employees, by acts described as follows:

(1) Blocking and obstructing by mass picketing and other means the Bolivia St. and Roosevelt Avenue gates leading to and from the Company's Hato Rey plant premises, thereby preventing or attempting to prevent the ingress and egress of

---

3. Sections 6 and 7 of the Act, Title 29, United States Code, Sections 152(6) and (7), provide:

"(6) The term 'commerce' means trade, traffic, commerce, transportation, or communication among the several States, or between the District of Columbia or any Territory of the United States and any State or other Territory, or between any foreign country and any State, Territory, or the District of Columbia, or within the District of Columbia or any Territory, or between points in the same State but through any other State or any Territory or the District of Columbia or any foreign country.

(7) The term "affecting commerce" means in commerce, or burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce."

4. The evidence presented to the Court reflects that on February 10, 12, 17, 21, 24, 26 and 27 and on March 3 and 21, 1972, employees of the Company have been restrained and coerced in the exercise of the rights guaranteed to them under Section 7 of the Act.

5. Section 7 of the National Labor Relations Act, Title 29, United States Code, Section 157, provides as follows:

"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a) (3) of this title."

employees, supervisors and managerial employees in the presence of other employees, and other persons as well as vehicles to and from said plant.

(2) Threatening to inflict and inflicting bodily injury or to cause other harm to employees, to supervisors and managerial employees in the presence of other employees, and other persons and/or threatening to inflict and inflicting damages to the property of employees of the Company, of supervisors and managerial employees, or of other persons.

(3) By intimidation, acts of violence and property destruction and threats of violence, attempting to prevent and preventing Company employees, executives, supervisors, and other persons from entering or leaving the Company's premises.

8. Upon the basis of the acts and conduct of the Respondents set forth in Finding of Fact No. 7, there is reasonable cause to believe that Respondents have interfered with, restrained and coerced and are interfering with, restraining and coercing employees in the exercise of their rights guaranteed in Section 7 of the Act and restraining and coercing supervisors and managerial employees in the presence of other employees, and that the Board would so hold, and thereby the Respondents have engaged in and are engaging in unfair labor practices affecting commerce within the meaning of Section 8(b) (1) (A) of the Act.

9. The acts and conduct of Respondents set forth in Finding of Fact No. 7 above, occurring in connection with the operations of the Company described in Finding of Fact No. 4, have a close, intimate and substantial relation to trade, traffic and commerce among the several states and the Commonwealth of Puerto Rico and tend to lead to and do lead to labor disputes burdening and obstructing commerce and the free flow of commerce.

10. It may be fairly anticipated that unless enjoined, Respondents will continue the unlawful acts and conduct set forth in Finding of Fact No. 7 above, or similar or like acts or conduct in violation of Section 8(b) (1) (A) of the Act and that the remedial processes of the Board will be frustrated if they are permitted to continue. The acts and conduct of the Respondents and of the strikers under their control and direction have caused and are causing irreparable damage and injury to employees' rights under the Act because they have been deprived and are being deprived of their statutory right, guaranteed by Section 7 of the Act, as amended, to refrain from participating in strike and picketing activities being conducted by the Respondents against El Mundo, Inc. and they have been deprived and will be deprived of their corresponding right under said Act to perform services for said Company during the course of said strike and picketing activities.

On the basis of the foregoing findings of fact, the Court makes the following:

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the parties and of the subject matter of this proceeding, and under Section 10 (j) of the Act, as amended, Title 29, United States Code, Section 160(j), is empowered to grant injunctive relief.

2. The acts and conduct of the respondents' officers and other agents and strikers, contained in finding of fact No. 7, would constitute violations of Section 8(b) (1) (A) of the Act. Sindicato Puertorriqueñio de Trabajadores Affiliated to Amalgamated Meat Cutters Union, 184 NLRB No. 56, 74 LRRM 1494 (1970); International Association or Machinists (General Elec. Co. of P. R.) 193 NLRB No. 126, 75 LRRM 1094 (1970); Unión de Trabajadores Industriales de Puerto Rico, 174 NLRB 489, 492–493, 74 LRRM 1286 (1969); United Mine Workers of America Dist. Council No. 6 (Weirten Construction Co.) 174 NLRB 344 (1969); United Mine Workers of America (Mears Coal Co.) 173 NLRB 665 (1968), enfd. 74 LRRM 2938 (3 Cir. 1970); United Mine Workers of America Dist. No. 2 (Solar Fuel Co.) 170 NLRB 1581 (1968), enfd. 72 LRRM 2784 (3 Cir. 1969); Int'l Longshoremen

& Warehouse Workers Union, 164 NLRB 1158 (Eureka Chemical Co.) (1967); Teamsters Local 783 (Coca Cola Bottling Co. of Louisiana) 168 NLRB 1776 (1966); Local 7083, United Mine Workers Union (Grundy Mining Co.) 146 NLRB 176 (1964); United Mine Workers Union (Grundy Mining Co.) 146 NLRB 244 (1964); Dressmakers Joint Council (Susan Evans Inc.) 146 NLRB 559, 569 (1964); Int'l Ladies Garment Workers Union (F. R. Knitting Mills) 145 NLRB 10 (1963); Local 5881, United Mine Workers Union (Grundy Mining Co.) 130 NLRB 1181 (1961).

■ 3. Where the acts of restraint and coercion are directed at supervisors or other persons not personally protected by the Act, if the acts are committed in the presence of employees who have the protection of the Act, this is sufficient to justify a finding of violation of Section 8(b) (1) (A) of the Act. United Furniture Workers of America Local 309 (Smith Cabinet Mfg. Co.), 81 NLRB 886, 888–889 (1949).

■ 4. It is not necessary that the employees who witness the coercive acts must be non-striking employees of the struck employer. It is sufficient if the acts are committed in the presence of any employee including the strikers. Int'l Woodworkers of America, (W. T. Smith Lumber Co.) 116 NLRB 507, 508 (1956), enfd. N. L. R. B. v. Int'l Woodworkers of America, 243 F.2d 745 (5 Cir. 1957).

■ 5. A union in charge of a strike is legally responsible for the coercive acts committed by the strikers during the course of the strike where the strikers are incited or encouraged by the officers or agents of the union to engage in such conduct or where the agents themselves by their participation in some coercive acts have established a pattern of coercive conduct for strike purposes which the strikers are expected to follow thereafter. Local 542, International Union of Operating Engineers (Giles and Ransome, Inc.) 139 NLRB 1169, 1175 (1962), enfd. Local 542, Int'l Union of Operating Engineers v. N. L. R. B., 328 F.2d 850 (3 Cir. 1964); Local 28 Master, Mates and Pilots Int'l Assn. (Ingram Barge Co.) 136 NLRB 1175, 1184 (1962), enfd. Local 28, Int'l Organization of Masters, Mates and Pilots, Inc. v. N. L. R. B., 116 U.S.App. D.C. 110, 321 F.2d 376 (D.C. Cir. 1963); Int'l Woodworkers of America (W. T. Smith Lumber Co.) supra.

■ 6. The striking union is also responsible for the coercive acts of the strikers where its officers and agents receive knowledge of the coercive acts being committed by the strikers and they do nothing to indicate their disapproval of such conduct failing to take positive steps to prevent their commission or repetition in the future or failing to discipline those strikers who persist in committing such unlawful acts. United Steelworkers of America (Worcester Stamped Metal Company) 153 NLRB 1561 (1965); Central Massachusetts Joint Board, Textile Workers (Chas Weinstein Company, Inc.) 123 NLRB 590, 591 (1959); Dist. 50, United Mine Workers (Tungsten Mining Corporation) 106 NLRB 903, 908 (1953).

■ 7. The Board is justified in seeking injunctive relief under Section 10(j) of the Act when the coercive acts are widespread and persistent as in the instant case and the striking union fails or refuses to take action to prevent their repetition. Vincent vs. Electrical Workers Union (Gen'l Elec. Co. Niskayuna Plant) 73 LRRM 2136 (D.N.Y.1969); Vincent vs. Electrical Workers Union (Gen'l Elec. Co. Waterford Plant) 73 LRRM 2139 (D.N.Y.1969); Potter vs. United Cement, Lime and Gypsum Workers Local 329, 48 LRRM 2965 (D.C. Texas 1961).

■ 8. Discretion of the Board to seek and the Court to grant temporary relief under Section 10(j) of the Act is not limited to rare situations where there is extreme danger to the public welfare or to situations with heavy and meaningful repercussions or to situations that have a demonstrably preju-

**890**

dicial impact on the public. The Board may seek and the Court may grant this kind of relief in any unfair labor practice case where the General Counsel has already issued a complaint alleging the commission of the unfair labor practices and there exists a reasonable probability that the purposes of the Act will be frustrated if immediate action is not taken. cf. Angle v. Sacks (10 Cir. 1967), 382 F.2d 655.

9. There is, and petitioner has, reasonable cause to believe that:

(a) Respondents are labor organizations within the meaning of Sections 2 (5) and 8(b) of the Act.

(b) El Mundo, Inc. is engaged in commerce within the meaning of Section 2 (6) and (7) of the Act.

(c) Respondents have engaged in, and are engaging in, unfair labor practices within the meaning of Section 8(b) (1) (A) of the Act affecting commerce within the meaning of Section 2(6) and (7) of the Act, and a continuation of these practices will impair the policies of the Act as set forth in Section 1 thereof and in the manner described above in Finding of Fact No. 10.

10. To preserve the issues for the orderly determination as provided in the Act, it is appropriate, just and proper that pending the final disposition of the matters herein involved pending before the Board, Respondents, their officers, representatives, agents, servants, employees, attorneys, and all members and persons acting in concert or participation with them, be enjoined and restrained from commission, continuation or repetition of the acts and conduct set forth in Finding of Fact No. 7 above, acts or conduct in furtherance or support thereof, or like or related acts or conduct, the commission of which in the future is likely or may fairly be anticipated from Respondents' acts and conduct in the past.

11. The Temporary Injunction to be issued in accordance with the present findings of fact and conclusions of law does not in any way restrain such rights

as the Respondents may have, pursuant to the Laws of the Commonwealth of Puerto Rico or of the United States of America, to engage in any peaceful and orderly strike and picketing activities against El Mundo, Inc.