**QUICK AIR FREIGHT, INC., Appellee,**

**v.**

**TEAMSTERS LOCAL UNION NO. 413 et al., Appellants.**

[Cite as *Quick Air Freight, Inc. v. Teamsters Local Union No. 413* (1989), 62 Ohio App.3d 446.]

Court of Appeals of Ohio,
Franklin County.

No. 87AP–1147.

Decided March 28, 1989.

*Schottenstein, Zox & Dunn, James M. L. Ferber, Curtis F. Gantz* and *David A. Kadela,* for appellee.

*Logothetis & Pence, Sorrell Logothetis, Daniel N. Kosanovich* and *John R. Doll;* and *Jerry L. Riseling,* for appellants.

REILLY, Judge.

This is an appeal from a judgment for plaintiff, Quick Air Freight, Inc. ("plaintiff"), against defendants Teamsters Local Union No. 413 (herein sometimes referred to as "the union"), the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, and several individual union members, jointly and severally for the amount of $576,928.25.

Plaintiff and the union entered into a collective bargaining agreement effective September 30, 1979 which terminated on July 3, 1982. Negotiations conducted prior to the expiration of the contract were unsuccessful and did not yield a new agreement. The union members began an economic strike on July 6, 1982, which lasted nearly a year.

Plaintiff was engaged in business as an air freight motor carrier and operated out of a terminal located at the Port Columbus International Airport. Its drivers were members of the union. After the strike began, the company invoked its right to hire replacement drivers. Consequently, peaceful picketing was interrupted intermittently by violence, threats and mass picketing.

Plaintiff filed suit in the common pleas court on July 7, 1982. Plaintiff alleged damages for losses to its business and property and requested injunctive relief against defendants by a temporary restraining order, a preliminary injunction, and a permanent injunction. On that day, the court issued a temporary restraining order enjoining defendants from unlawful conduct. The order was subsequently amended and extended by the court upon agreement of the parties.

Plaintiff filed contempt charges on July 12, 1982, and joined as defendants other local union members who were not plaintiff's employees. That same day, the court issued an order to show cause why defendants should not be

held in contempt. Plaintiff thereafter amended its complaint. Defendants filed a petition to remove the case to federal district court, which found no federal jurisdiction and remanded the case to the common pleas court.

The court issued an agreed permanent injunction order enjoining defendants from engaging in further unlawful acts. Then plaintiff filed charges alleging that defendants had acted in violation of the court's permanent injunction and were in contempt of court. A hearing was held on plaintiff's contempt charges relating to the acts of defendants for the period from July 23, 1982 to August 3, 1982. The hearing did not involve the other contempt charges filed by plaintiff.

A referee issued a report on October 5, 1982 finding numerous violations of the permanent injunction order and recommended assessing fines against defendants. The trial court adopted the report but reduced the fines. The court found that, for the period of time involved, there was no indication that the union authorized, participated in or ratified the alleged unlawful acts, or directly or indirectly aided or abetted the commission of such acts.

A trial on the merits of plaintiff's damage claims was referred to another court referee for hearing, which was held periodically over a year and included more than one hundred witnesses. The referee issued a report on July 25, 1986.

The referee adopted plaintiff's proposed findings of fact and conclusions of law consisting of three hundred sixty proposed factual findings and fifty-eight proposed conclusions of law. With some modifications, the referee also made specific rulings relating to objections made during the hearing. He determined that plaintiff had proven unlawful and tortious acts had been committed, that individual union members engaged in unauthorized misconduct which was ratified by the union, and that the acts directly and proximately caused plaintiff a substantial loss of business and considerable property damage. The referee also found that defendants engaged in "legal malice."

The referee recommended that judgment be entered in favor of plaintiff in the amount of $503,238.08. Defendants filed objections to the referee's report. Plaintiff also filed a motion for an award of prejudgment interest pursuant to R.C. 1343.03(C).

The trial judge recused himself from the case on June 16, 1987. Another judge was appointed. He approved the referee's report, denied plaintiff's motion for prejudgment interest, and increased the damage award by $73,-690.17 to a total amount of $576,928.25. Judgment was entered in plaintiff's favor on September 18, 1987. Defendants' motion for a new trial was denied.

Defendants have timely appealed and assert the following assignments of error:

"I. The Common Pleas Court erred by admitting into evidence, non-probative, prejudicial, hearsay testimony from plaintiff-appellee's customers.

"II. The Common Pleas Court erred by admitting into evidence, non-probative hearsay evidence with respect to alleged mass picketing.

"III. The Common Pleas Court erred by finding, against the manifest weight of the evidence and contrary to law, liability on the part of the defendants-appellants.

"IV. The Common Pleas Court erred by awarding damages, against the manifest weight of the evidence and contrary to law, against the defendants-appellants.

"V. Irregularities in the proceedings resulted in prejudice to the defendants-appellants."

Plaintiff has filed a cross-appeal and advances the following cross-assignments of error:

"I. The Common Pleas Court erred by not awarding Quick an additional $546,918.00 in damages for business losses resulting from the Defendants' unlawful strike activities.

"II. The Common Pleas Court erred by not awarding Quick an additional $74,358.00 in damages for business that it lost from non-testifying customers as a result of the Defendants' unlawful strike activities.

"III. The Common Pleas Court erred by not awarding Quick punitive damages against Local 413 in the amount of $1,000,000.00; against Milburn, Payne and Jerry West in the amount of $50,000.00 each; and against the remaining Defendants in the amount of $2,000.00 each.

"IV. The Common Pleas Court erred by not awarding Quick prejudgment interest, pursuant to Ohio Revised Code Section 1343.03(C), in the amount of $1,247,151.60, calculated at the rate of 10% per annum from July 6, 1982, the date the Company's cause of action accrued, to September 18, 1987, the date of the Court's Judgment Entry.

"V. The Common Pleas Court erred by not awarding Quick $14,164.40 in costs for vital and necessary expert witness and court reporter fees."

In the first assignment of error, defendants contend that the trial court erred by admitting into evidence inadmissible hearsay testimony from twenty-one of plaintiff's customers. Defendants maintain that the testimony was improperly admitted under Evid.R. 803(3), a hearsay exception, which provides:

"Then Existing, Mental, Emotional, or Physical Condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will."

Defendants cite testimony from several of plaintiff's customers who testified regarding their reasons for discontinuing business with plaintiff. For example, a representative of Goodyear testified that Goodyear ceased doing business with plaintiff because he had heard trucks were being stopped from going in and out of plaintiff's facilities and that drivers were being harassed. His testimony was admitted pursuant to the hearsay exception, Evid.R. 803(3), as relevant to his state of mind.

■ Evid.R. 803(3) allows the testifying witness to testify to the then existing state of mind of the declarant. The court apparently confused the declarant with the testifying witness. None of the testifying witnesses testified to a declarant's "then existing mental, emotional or physical conditions." The court erred in admitting such testimony under Evid.R. 803(3). Such error, however, was harmless.

■ The witnesses explained the reasons for ceasing business with plaintiff. Evid.R. 801(C) defines "hearsay" as " * * * a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." The testimony was not admitted to prove the truth of what the testifying witnesses had heard, but for the limited purpose of defining why the companies stopped doing business with plaintiff. As the Supreme Court stated in *State v. Thomas* (1980), 61 Ohio St.2d 223, 232, 15 O.O.3d 234, 239, 400 N.E.2d 401, 408, " * * * extrajudicial statements made by an out-of-court declarant are properly admissible to explain the actions of a witness to whom the statement was directed * * *." See, also, *State v. Congeni* (1981), 3 Ohio App.3d 392, 398, 3 OBR 457, 463, 445 N.E.2d 698, 705. Thus, it was irrelevant that the witnesses may not have had personal knowledge of actual strike misconduct.

The testimony was offered to establish that defendants' alleged tortious conduct resulted in loss of business. The testimony was particularly relevant to plaintiff's damage claims. There is no indication that the trial court relied upon the testimony for any other purpose. The court relied upon other substantial direct or circumstantial evidence to establish a causal connection between the alleged strike misconduct and damages incurred from the lost business.

Defendants' first assignment of error is overruled.

■ In the second assignment of error, defendants contend that the trial court erred in admitting forty-eight incident reports prepared by plaintiff's employees concerning alleged acts of mass picketing and strike violence. The referee found that, while the reports were not admissible under the business records exception, they were not hearsay under Evid.R. 801(D)(1)(c), which provides that a prior statement of a witness is not hearsay if it is " * * * one of identification of a person soon after perceiving him * * *." As stated in the Staff Notes to the Ohio Rules of Evidence, " * * * [t]he rationale for the rule is that the perception made nearer the event is at least as likely, if not more likely, to be accurate than a subsequent identification in the court room. * * * " The referee also held that even if the reports were hearsay, the documents were admissible under Evid.R. 803(A), the "Present Sense Impression" exception.

Defendants challenge the admissibility of the reports and further contend that the court erred in relying upon them as evidence of defendants' alleged unlawful misconduct. Defendants maintain that not all of the reports were written based upon the personal observations of the reporting employee. Defendants refer to Paul Smith's testimony for Quick Air Freight as evidence that the incident reports were based upon other persons' observations as related to Smith. Defendants cite two lines written at the bottom of plaintiff's Exhibit 102, the 9:30 entry, which Smith testified was based upon another employee's observations. While that entry is inadmissible under Evid.R. 801(D)(1), the other entries in the report (7:30, 7:50, 8:00, 8:03 and 8:30) were based upon Smith's personal observations. There is no indication that the court relied upon the 9:30 entry in Finding of Fact 70.

Defendants do not note any other incident report where the witnesses' recorded observations were not his or her own. Those employees testified to their personal observations recorded as perceived soon after identifying the pickets. Each witness was subject to cross-examination. Each of the reports Smith testified to were properly admitted under Evid.R. 801(D)(1)(c) for identification purposes. Moreover, there is no indication that the court improperly relied upon statements not based upon a witness' personal observations.

Defendants also allege that the court compounded its error by relying upon the alleged inadmissible reports to prove strike misconduct. Defendants note Findings of Fact 70 and 107 as examples where the incident reports were admitted for purposes beyond the scope of identification as substantive proof of individual misconduct.

■ Defendants contend that plaintiff's Exhibit 102 was admitted to hold particular defendants liable for strike misconduct. As indicated above, the document was properly admitted under Evid.R. 801(D)(1)(c). Furthermore, Paul Smith testified independently of plaintiff's Exhibit 102 and identified those men among the approximately twenty-five persons on the July 12, 1982 picket line. At any rate, even if the document was improperly admitted or relied upon, there was no prejudice since there was other independent substantial credible evidence throughout the record implicating the named defendants in mass picketing and other unlawful strike activity.

The same rationale is applicable to defendants' challenge to plaintiff's Exhibit 107 in which they argue that the court relied upon that report in Finding of Fact 107 as evidence of misconduct. Plaintiff's Exhibit 107 was admitted pursuant to Evid.R. 801(D)(1)(c) not only for identification purposes but erroneously as proof that defendants tortiously interfered with plaintiff's business, and contributed to the loss of customers which resulted in a loss of business. Nonetheless, such error was harmless. There was other independent, substantial credible evidence that the mentioned defendants, as well as the other defendants identified in plaintiff's Exhibits 102–150, were liable for the unlawful and tortious acts committed during the strike.

Evid.R. 103(A) states that: "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected * * *." Notwithstanding plaintiff's Exhibits 102–150, the record was replete with definite evidence that each defendant specifically engaged in mass picketing and/or other strike misconduct. Hence, any error was not prejudicial and therefore was harmless.

Defendants' second assignment of error is overruled.

■ In the third assignment of error, defendants contend that the finding of liability by them is against the manifest weight of the evidence and is contrary to law. To prevail, defendants must demonstrate that there was not some competent, credible evidence going to all the essential elements of the case. As stated in the syllabus of *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578:

"Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."

Defendants emphasize two findings of fact, Findings of Fact 38 and 58, as demonstrative that the report is plagued with unsupported factual findings.

■ Finding of Fact 38 involves strike activities which occurred on July 6, 1982, the date the strike began and the day before the temporary restraining

orders were issued. Defendants contend that the finding that several defendants tortiously interfered with plaintiff's business and contributed to its loss of business is not supported by the record. There was, however, substantial evidence that on July 6, 1982 they engaged in mass picketing, made threats, and blocked the driveway of one of plaintiff's customers. Moreover, defendants blocked ingress to and egress from plaintiff's airport facilities on that day. Further, there were threats to assault some of plaintiff's new drivers. Hence, the judgment was supported by competent credible evidence.

Further, considering the testimony of one hundred witnesses, there was evidence that, throughout the strike, defendants threatened and assaulted plaintiff's employees and customers, engaged in mass picketing, blocked ingress to and egress from the company and its customer's facilities, forced trucks off the road, displayed firearms, damaged company property, made bomb threats, and ran plaintiff's trucks off the road.

■ Defendants maintain that there was no clear and convincing evidence that the union participated in, authorized, and ratified the numerous unlawful acts. For the union to incur liability, it must be shown that the unlawful acts were committed by its agents and that the union actually participated in, authorized, or ratified the unlawful conduct engaged in by its agents and members.

■ Factors to be considered in deciding whether a union authorized, ratified, or condoned violent activities of its agents, officers and members include whether the violent activities furthered the union's interests, *United Mine Workers of America v. Osborne Mining Co.* (C.A.6, 1960), 279 F.2d 716, 725; whether the striker's violent acts were encouraged or incited by the union officers or agents, *Compton v. Puerto Rico Newspapers Guild, Local 343* (D.Puerto Rico 1972), 343 F.Supp. 884, 889; whether the union's officers took steps to prevent a repetition of violent acts in the future; whether the union officers and agents failed to discipline strikers who committed repeated unlawful acts; and whether the violent acts continued after the issuance of an injunction. *Kayser–Roth Corp. v. Textile Workers Union of America* (C.A.6, 1973), 479 F.2d 524, 527, certiorari denied (1973), 414 U.S. 976, 94 S.Ct. 292, 38 L.Ed.2d 219.

■ Defendants initially contend that union officers did not participate in, authorize, or ratify any alleged misconduct. There is testimony in the record, however, involving participation by the union's officers.

The foregoing activities were apparently intended to accomplish the objective of bringing plaintiff to the bargaining table. There was evidence that the union authorized, ratified, and encouraged the mass picketing and other

activities of its officers, members and agents and, therefore, must be liable for their actions.

Defendants maintain that the court's finding in the contempt proceedings that the union did not participate in, authorize, or ratify violent activities is entitled to preclusive effect. The contempt proceedings related to events which occurred only during the eleven-day period from July 23 to August 3, 1982. A final judgment on the merits of an action rendered by a court is conclusive and binding upon the parties and those who are in privity with them in any subsequent litigation involving the same course of action. *Whitehead v. General Tel. Co.* (1969), 20 Ohio St.2d 108, 49 O.O.2d 435, 254 N.E.2d 10. In this case, the contempt proceedings and defendants' actions cover various time periods and involved different factual elements and standards of proof. Since two different actions are involved, the doctrine of *res judicata* is inapplicable. See, also, *Anchor Motor Freight, Inc. v. Internatl. Bhd. of Teamsters* (C.A.6, 1983), 700 F.2d 1067. (The trial court's finding in a contempt proceeding concerning a union's responsibility for a wildcat strike was not *res judicata* in a subsequent damage action.)

Finally, defendants contend that the trial court erred in finding the individual defendants jointly and severally liable. Defendants allege that each defendant should be found liable only for those damages resulting from his specific conduct. It is well-established, however, that where two or more persons acting in concert, or acting independently but concurrently with one another, cause a single injury, both are liable to the injured party either jointly or severally. In this case, the record supports the finding that each defendant acted in concert causing a loss of business and resulting lost profits and, therefore, are jointly and severally liable.

The cases which defendants cite are inapplicable. While defendants rely upon *Natl. Labor Relations Bd. v. Cambria Clay Prod. Co.* (C.A.6, 1954), 215 F.2d 48, for the proposition that not all strikers can be condemned for the unlawful conduct of a few, each defendant actively engaged in a series of concerted acts of misconduct. Although defendants cite other cases in support of the proposition that damages cannot be assessed for engaging in lawful, concerted activity, see *Complete Auto Transit v. Reis* (1981), 451 U.S. 401, 101 S.Ct. 1836, 68 L.Ed.2d 248, plaintiff incurred damages as demonstrated by the above examples—as a direct result of defendants' participation in unlawful, concerted activity. Furthermore, plaintiff need not identify the specific individuals that caused the specific damages. See *Charles D. Bonanno Linen Services, Inc. v. McCarthy* (D.Mass.1982), 550 F.Supp. 231, 244.

Defendants' third assignment of error is overruled.

In the fourth assignment of error, defendants maintain that the award of damages for loss of business, damage to vehicles, security expenses, and attorney fees expenses was against the manifest weight of the evidence. Defendants contend that plaintiff failed to prove by clear and convincing evidence that its damages were proximately caused by unlawful conduct. Nevertheless, defendants are liable for damages which were directly and proximately caused by the unlawful strike misconduct. Contrary to defendants' assertions, defendants can be held liable for losses resulting from activities committed by unnamed and unidentified strikers since each participated in concert in engaging in strike misconduct with other defendants.

■ Defendants contend that the court erred in awarding damages to plaintiff for loss of business. Defendants refer to the testimony from four of twenty customers who testified to support the proposition that no evidence was presented that they ceased doing business with plaintiff because of strike misconduct. Their testimony indicates that they stopped business with plaintiff because it could not continue to provide the necessary service during the strike due to service interruptions.

Defendants maintain that plaintiff failed to establish that the loss of business from those customers was proximately caused by unlawful strike misconduct. Nonetheless, there was definite direct and circumstantial evidence of strike misconduct presented before the referee. Thus, it was reasonable for the court to infer that the service interruptions were directly related to strike misconduct rather than lawful strike activities. Defendants allege that it was plaintiff's burden to present evidence that each customer ceased business with plaintiff because of service interruptions caused by unlawful misconduct.

It was enough that the representatives testified that service interruptions resulted from the strike. The court could reasonably conclude that the service interruptions resulted from strike misconduct. Defendants did not present contrary evidence indicating that the service interruptions were related to lawful economic strike activities. Hence, there was sufficient direct and circumstantial evidence of a causal relationship between the strike misconduct and damages incurred by plaintiff.

■ Defendants also dispute the amount of damages awarded by questioning the method of calculating damages, which was the lost-contribution-to-overhead method. They contend that such method is an unacceptable basis to award damages for loss of business. Defendants emphasize that the lost-contribution-to-overhead method is not synonymous with lost net profits.

Defendants' argument is not well-taken. Defendants' expert's method of calculation may be preferable but that does not render plaintiff's method of calculation invalid. The fact that plaintiff's calculation does not comply with strict auditing practice also does not render it invalid. The method basically calculates lost total revenues minus total expenses as per each customer. Plaintiff's expert witness was qualified as competent to testify. His method for arriving at damages, while not in accordance with certain auditing standards, does not render his testimony incompetent.

There was no testimony that defendants' method of calculation was the exclusive method of calculating damages. No method of calculation to project damages for loss of business is completely accurate. Although one method may be more accurate than another, that is not dispositive. Defendants were allowed ample opportunity to cross-examine plaintiff's expert's testimony and to challenge the admissibility of related documents which were introduced. Moreover, defendants presented their own expert witness, who essentially testified that the lost contribution to overhead would not be a reasonable basis for calculating damages, and that no lost profits were directly attributable to the strike dispute.

The issue is which witness was most believable and credible. Since plaintiff's expert was qualified to testify, and the method of calculation was reasonable, the court in its discretion could accept the testimony of plaintiff's expert over defendants' expert. The record shows that plaintiff established that defendants' misconduct proximately caused damages to plaintiff, and that the award of damages was supported by substantial evidence to a reasonable degree of certainty.

Defendants maintain that the court erred in awarding damages for company vehicles because there was no direct testimony regarding the individual defendants who caused the damages. There was, however, sufficient evidence presented as to the amount of damages. See *Charles D. Bonanno Linen Service, Inc.*, 550 F.Supp. at 244, and *Allen v. United Mine Workers of America* (C.A.6, 1963), 319 F.2d 594, 598 (property damage recoverable). The court emphasized in *Charles D. Bonanno Linen Service, Inc., supra,* that a union may be held responsible for damages wherein some of the acts were committed by unidentified individuals.

■ Defendants dispute the award of $7,298.06 for the costs incurred in hiring additional drivers to ride along with the regular drivers for safety reasons. Defendants allege that the additional drivers hired by plaintiff performed the duties previously performed by the striking employees. Consequently, there were no additional costs attributable to the hiring of replacement drivers who were paid instead of the striking employees. The evidence

indicates, however, that because of the strike violence it was necessary to provide the trucks with additional drivers to ensure the safety of the drivers and cargo.

Defendants also question the award of $46,488.35 for fees paid for security guard services hired during the strike. There was testimony that, because of the strike violence, two security guard services were hired because of the tortious conduct of defendants. A former chairman of the National Labor Relations Board testified as to the need for such expenses.

Defendants also challenge the award of $10,912.22 in damages for funds paid to other carriers because plaintiff was unable to deliver due to defendants' unlawful conduct. Defendants maintain that no evidence was presented that the purchase of alternative transportation cost plaintiff any money, or that the losses incurred were proximately caused by the unlawful conduct. However, there was testimony and other evidence to support the referee's finding that plaintiff had to purchase transportation to deliver its freight because of defendants' tortious conduct. The burden was upon defendants to present evidence that the damages have been reduced or offset by the cost plaintiff would have incurred to deliver the freight, or payment received from customers for the deliveries made by the other companies.

Defendants contend that the court erred in awarding attorney fees in the amount of $117,728.08, and argue that the referee's finding of legal malice was an insufficient basis upon which to award attorney fees. Except for statutory authorization, the award of attorney fees is proper only upon a finding of actual malice, *Davis v. Tunison* (1959), 168 Ohio St. 471, 7 O.O.2d 296, 155 N.E.2d 904; *Columbus Finance v. Howard* (1975), 42 Ohio St.2d 178, 184, 71 O.O.2d 174, 177, 327 N.E.2d 654, 658, which has been defined as " * * * that state of mind under which a person's conduct is characterized by hatred or ill-will, a spirit of revenge, retaliation, or a determination to vent his feelings upon other persons. * * * " *Pickle v. Swinehart* (1960), 170 Ohio St. 441, 443, 11 O.O.2d 199, 200, 166 N.E.2d 227, 229; *Langhorst v. Riethmiller* (1977), 52 Ohio App.2d 137, 6 O.O.3d 101, 368 N.E.2d 328; *United Power Co. v. Matheny* (1909), 81 Ohio St. 204, 211, 90 N.E. 154, 156; *Finney v. Smith* (1877), 31 Ohio St. 529, 535.

The referee, in his July 25, 1986 report, correctly noted that the two terms "actual malice" and "legal malice" are not synonymous. He stated that " * * * [d]efendants' conduct fits squarely within the above language describing 'legal' malice. * * * " It is unclear from the referee's report whether he found actual malice. While the referee found that defendants' conduct fit squarely within the definition of "legal malice," he did not expressly make a finding as to actual malice. However, in another part of the report, the

referee ruled that there was evidence to support an award of punitive damages, which necessarily requires a finding of actual malice. The referee's report is ambiguous. Accordingly, the cause is remanded to the trial court to determine whether defendants' conduct constituted actual malice, and, if so, whether the award of attorney fees in the amount of $117,728.08 was proper.

Defendants' fourth assignment of error is, in part, overruled, and, in part, sustained.

In the fifth assignment of error, defendants contend that the trial judge improperly removed himself during the course of the proceedings and that the judge who replaced him failed to properly review the referee's report.

There is nothing in the record to indicate that the trial judge did not timely and properly recuse himself from the case. Circumstances, which were not present from the outset, could arise during the course of proceedings which would require a judge to properly remove himself or herself from a trial.

Defendants' assumption that the successor judge could not have independently reviewed the referee's report because he issued his report within sixty days of his appointment is conjectural and not a basis for error. The trial judge should be commended for acting promptly and diligently on a complex and voluminous case.

Defendants' fifth assignment of error is overruled.

In the first cross-assignment of error, plaintiff contends that it established that it would sustain future damages in the additional amount of $546,981 as a direct and proximate result of defendants' unlawful strike activities. Plaintiff essentially argues that it was error for the court to award damages in the amount of one year's lost business since it demonstrated at trial that twenty established customers had ceased or reduced their amount of business with plaintiff. The court adopted the referee's ruling that an award for future lost business beyond one year would be speculative and awarded $211,800 in damages.

▮▮▮▮ There can be no recovery for lost profits of a business which are uncertain and speculative. "A plaintiff may recover profits lost as a result of a defendant's tortious conduct if such damages may naturally be expected to follow from the wrongful act and if the damages are reasonably ascertainable. * * *" *Henry v. Akron* (1985), 27 Ohio App.3d 369, 372, 27 OBR 465, 468, 501 N.E.2d 659, 663. See, also, *Battista v. Lebanon Trotting Assn.* (C.A.6, 1976), 538 F.2d 111; *LoSchiavo v. Northern Ohio Traction & Light Co.* (1922), 106 Ohio St. 61, 138 N.E. 372. The recovery of lost profits for defendant's wrongful acts is not allowed unless the loss is the immediate and not the remote consequence of the wrongful acts. *Myers v. Sunlight Laun-*

*dry Co.* (1918), 10 Ohio App. 275. Plaintiff's reliance upon cases involving awards for future damages for wrongful death, wrongful discharge, and old age discrimination are unpersuasive and not relevant to the primary issue herein as to whether lost profits for a five-year period have been proven to a reasonable degree of certainty. The fact that lost future wages beyond one year were awarded in those cases does not support plaintiff's position that an award for one year's lost business was arbitrary or capricious in this case. For example, wrongful death actions are controlled by statute and are not applicable herein.

■ Plaintiff presented the testimony of twenty customers regarding their pre-strike and post-strike levels of business. They also testified as to their anticipated future use of plaintiff's business. There was testimony that, because of strike violence and mass picketing, all of the customers had stopped business with plaintiff after the strike for some period of time. Six customers, who testified that they had ceased doing business with plaintiff, did not anticipate future use of plaintiff's services.

At the time of the testimony on June 22, 1983, seven customers testified as to major reductions in their business with plaintiff ranging from doing "little business" to a twenty-five percent reduction in business. Three testified that their level of business was slightly less than the pre-strike period. Four testified that their level of business as of June 22, 1983 was the same as prior to the strike. As to the customers' anticipated future use of plaintiff, six discontinued business, five testified that business would increase yearly from ten to twenty percent over reduced rates, three testified that the level of business with plaintiff would continue at a reduced rate, five testified that the level of business would continue at a pre-strike level, and one refused to comment. A review of the testimony indicates that it was difficult for them to estimate how much future business they would give to plaintiff.

There was evidence that the state of the economy had a significant effect on future business. As Mr. Jerry Donaldson for Delta Airlines testified, "It seems like the economy just came back within the last few weeks. * * * " Mr. Dennis P. Gatta of Eastern Airlines testified that the level of business with plaintiff was about the same as the pre-strike level, wherein he stated: "We are probably, percentage-wise, equal to where we were. Our volume, of course, is down. A lot of businesses, because of the economy and so forth, just aren't shipping like they were. So our volume is down. So I'm sure the volume to Quick is probably down also."

There was testimony that plaintiff's financial condition was deteriorating prior to the strike and was losing a substantial amount of business. Plaintiff

lost a major client, Jeffrey Manufacturing, prior to the strike for unrelated reasons.

Defendants' expert witness, Mr. English, testified as to the serious financial effect the loss of Jeffrey Manufacturing had on plaintiff's business. He noted that there were numerous factors contributing to the difference in pre-strike and post-strike revenues. He attributed the loss of revenues due to decreased rates and competitive pricing. He stated that, for the period of 1979–1983, the company had a steady deterioration.

A review of the testimony of plaintiff's expert, Mr. Friedman, and the other relevant exhibits in the record indicate that plaintiff may have incurred lost profits beyond a twelve-month period. Nonetheless, we do not find that the referee acted arbitrarily or capriciously in not awarding damages beyond a one-year period. The evidence of lost profits over a sixty-month period was disputed. It was within the referee's discretion to find that the award of damages beyond a one year's period would be speculative and not capable of calculation to a reasonable degree of certainty.

Plaintiff's first cross-assignment of error is overruled.

In the second cross-assignment of error, plaintiff contends that the court erred in not awarding an additional $74,358 in damages for alleged lost business from customers who did not testify at trial. Plaintiff does not cite any case law in support of its proposition that the testimony of customers regarding the business with plaintiff proved that nontestifying customers also reduced their business with plaintiff as a proximate result of defendants' unlawful strike activity. It was plaintiff's burden at trial to prove, by a preponderance of the evidence, damages to a reasonable degree of certainty. Plaintiff presented no evidence that the nontestifying customers ceased doing business because of the strike as opposed to a myriad of other possibilities unrelated to the strike. To award the damages requested would result in mere speculation and conjecture.

Plaintiff's second cross-assignment of error is overruled.

In the third cross-assignment of error, plaintiff contends that the trial court erred in refusing to assess punitive damages against defendants. Plaintiff sought an award in the amount of $1,000,000 against Local 413, $50,000 each against several defendants, and $2,000 against the other defendants. The referee found that:

" * * * Punitive damages are recoverable in this case, baaws [*sic*] upon malice. The Court is not required to award punitive damages, however, even though malice is found. *Popke v. Hoffman* 21 Ohio App. 454, 153 N.E. 248 [ (1926) ]. In the case at hand, the compensatory damages are sufficient to

deter others from similar conduct and, although their purpose is to make the Plaintiff whole, they also, in effect, punish the Defendants. It is, therefore, concluded that punitive damages, in this case, are unnecessary."

The trial court adopted the referee's recommendation. Plaintiff maintains that the award of compensatory damages was not sufficient to punish defendants and deter them from engaging in similar misconduct. The award of punitive damages in Ohio " ' * * * has been recognized * * * as that of punishing the offending party and setting him up as an example to others that they might be deterred from similar conduct.' *Detling v. Chockley* [ (1982), 70 Ohio St.2d 134], * * * at 136, 24 O.O.3d [239] at 240, 436 N.E.2d [208] at 209." *Preston v. Murty* (1987), 32 Ohio St.3d 334, 335, 512 N.E.2d 1174, 1176.

 Punitive damages may be awarded for injuries sustained as a result of another's conduct which manifest actual malice. *Smithhisler v. Dutter* (1952), 157 Ohio St. 454, 47 O.O. 334, 105 N.E.2d 868, paragraph one of the syllabus. Actual malice is proved where the evidence shows that the actor's conduct was motivated by hatred, ill-will, revenge, and the like. *Preston v. Murty, supra; Columbus Finance v. Howard, supra.*

 The award of punitive damages and attorney fees requires a finding of actual malice rather than merely legal malice. *Smithhisler v. Dutter, supra; Davis v. Tunison* (1959), 168 Ohio St. 471, 7 O.O.2d 296, 155 N.E.2d 904; *Pickle v. Swinehart, supra;* and *Columbus Finance v. Howard, supra.*

 The referee found that, while there was sufficient evidence to support a finding of actual malice, such an award is discretionary. See *Popke v. Hoffman* (1926), 21 Ohio App. 454, 153 N.E. 248. The referee recognized that the purpose of compensatory damages was to compensate plaintiff for its losses but found that the award was sufficient to punish defendants and deter them and others from similar conduct. Considering the amount of the award and the financial position of defendants, the trial court did not abuse its discretion in finding that punitive damages were unnecessary.

Plaintiff's third cross-assignment of error is overruled.

In the fourth cross-assignment of error, plaintiff maintains that it is entitled to an award of prejudgment interest pursuant to R.C. 1343.03(C) based upon defendants' alleged failure to make a good faith effort to settle the case. That statutory provision provides:

"Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict

or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case."

Defendants assert that the court properly denied plaintiff's motion for prejudgment interest which was filed after the referee's report but eleven months prior to the trial court's decision. Defendants rely upon the Supreme Court case in *Cotterman v. Cleveland Elec. Illum. Co.* (1987), 34 Ohio St.3d 48, 517 N.E.2d 536, for the proposition that a motion for prejudgment interest must be filed within fourteen days of the entry of judgment. Defendants assert that a motion filed prior to a judgment entry is improper and falls outside the ambit of *Cotterman.* The court in *Cotterman* did not interpret R.C. 1343.03(C) as requiring that such a motion had to be filed within fourteen days from the filing of the judgment entry. The court in *Cotterman* simply set an outermost limit of fourteen days to file the motion after entry of judgment as required of other post-verdict trial motions.

The motion was filed after the referee's decision but prior to the court's decision and judgment entry. The primary rationale in *Cotterman* for setting time limits following a judgment entry was to ensure that the losing party had a "justifiable expectation of finality." Since the motion was filed after the referee's recommendation, but prior to the court's decision, that expectancy was not nullified. Hence, there is no reason shown as to how the filing of the motion prior to the court's decision prejudiced defendants since the motion was not heard until after the trial court's verdict.

The trial court erred by not conducting a post-verdict hearing to determine, pursuant to R.C. 1343.03, whether defendants failed to make a good faith effort to settle the case. Exhibit A to plaintiff's motion for prejudgment interest indicates that plaintiff wrote to defendants' counsel one month prior to trial in an attempt to settle the case for $210,000. Also, Exhibit B to plaintiff's motion for prejudgment interest indicates that defendants offered to settle for $6,000 before the issuance of the referee's report.

There is no indication of the basis upon which the trial court denied plaintiff's motion for prejudgment interest. There was no finding made concerning the parties' effort to settle. As stated in *King v. Mohre* (1986), 32 Ohio App.3d 56, 57, 513 N.E.2d 1366, 1368, pursuant to R.C. 1343.03(C), the legislature has " * * * required that a hearing be conducted, subsequent to the trial verdict, at which time the court must determine the factual issues as to the bona fides of the respective efforts of the parties to settle the case." The court in *King* further noted that: " * * * [A] hearing on a motion for

prejudgment interest must be evidentiary in nature so as to permit a documented basis for the trial court's decision as well as to provide a meaningful record for appellate review." *Id.* at 58, 513 N.E.2d at 1369. See, also, *Ott v. Marion Plaza, Inc.* (Aug. 31, 1987), Marion App. No. 9–85–27, unreported, 1987 WL 16265; *G.F. Trucking Co. v. Midwestern Indemn. Co.* (Aug. 10, 1987), Mahoning App. No. 86 C.A. 120, unreported, 1987 WL 15449.

Since the trial court did not make any finding concerning the parties' efforts to settle the case, the case is remanded for a hearing pursuant to R.C. 1343.03(C) on the motion for that purpose.

Plaintiff's fourth cross-assignment of error is sustained.

In the fifth cross-assignment of error, plaintiff maintains that the court erred in not awarding it $114,164.40 in costs for expert witness and court reporter fees. The trial court ruled that: "The Court feels that the calling of experts or the taking of depositions was within plaintiff's prerogative and are not properly taxable as court costs." Even if such costs were properly taxable, the trial court did not abuse its discretion by not awarding such costs, which were outside the basic definition of costs in a civil case.

Plaintiff's fifth cross-assignment of error is overruled.

The judgment of the trial court is in part affirmed and in part reversed, and the cause is remanded for further proceedings consistent with this opinion and in accordance with law.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

STRAUSBAUGH and McCORMAC, JJ., concur.