The STATE of Ohio, Appellee,

v.

TURVEY, Appellant.

[Cite as *State v. Turvey* (1992), 84 Ohio App.3d 724.]

Court of Appeals of Ohio,
Scioto County.

No. 1915.

Decided Dec. 29, 1992.

726

*Lynn Alan Grimshaw,* Scioto County Prosecuting Attorney, for appellee.
*Joseph L. Hale,* for appellant.

PETER B. ABELE, Judge.

This is an appeal from a judgment of conviction and sentence entered by the Scioto County Common Pleas Court. The jury found Wade Turvey, defendant below and appellant herein, guilty of two counts of gross sexual imposition in violation of R.C. 2907.05(A)(3) and one count of rape in violation of R.C. 2907.02(A)(1)(b).

Appellant assigns the following errors:

First Assignment of Error:

"The trial court erred by overruling defendant-appellant's motion to suppress evidence."

Second Assignment of Error:

"The trial court erred by refusing to grant the defendant-appellant's motion to admit into evidence the audio recording of the defendant-appellant's statement made to investigator Ken Days and to play the audio recording of the defendant-appellant's statement to the jury."

Third Assignment of Error:

"The trial court committed reversible error by improperly admitting hearsay evidence, over the defendant-appellant's objection, when the trial court permitted Jerri Robinson to testify about a statement made by Tracy Robinson."

Fourth Assignment of Error:

"The trial court committed reversible error by improperly limiting the defendant-appellant's cross-examination of investigator Days, thereby denying the defendant-appellant of his right to effectively confront the witnesses against him, in violation of the defendant-appellant's rights as guaranteed to him by the Sixth and Fourteenth Amendments to the United States Constitution."

Fifth Assignment of Error:

"The trial court committed reversible error by admitting, over objection, the defendant-appellant's incriminating statements without any evidence of a corpus delicti."

Sixth Assignment of Error:

"The trial court committed reversible error by admitting, over objection, double hearsay testimony during Rolland Williston's rebuttal testimony."

Seventh Assignment of Error:

"The jury's verdicts relative to Count One and Count Two of the indictment were against the manifest weight of the evidence."

On November 22, 1989, the grand jury indicted appellant for one count of gross sexual imposition and one count of rape against his stepdaughter, Tracey Robinson, and one count of gross sexual imposition against her cousin, Jerri Robinson. Both girls were born in 1977. The bill of particulars explained the offenses as follows:

"The defendant, while picking berries performed cunnilingus upon Tracy Robinson when said victim was in third grade. Since victim was in third grade, the defendant has touched, fondled and licked Tracy Robinson's breast and vaginal areas.

"On July 29, 1989, and July 30, 1989, defendant fondled Jerri Robinson's vaginal area."

On August 1, 1989, Jerri's stepfather complained to the Scioto County Children Services ("SCCS") about the sexual abuse appellant committed against Jerri. A SCCS caseworker questioned Jerri on August 2, 1989. After Jerri alerted the caseworker to the sexual abuse against Tracey, the caseworker questioned Tracey on August 3, 1989. On August 22, 1989, Scioto County Sheriff's Department Investigator Ken Days questioned appellant. Appellant confessed to the crimes.

The clerk of courts issued a summons on the indictment on November 22, 1989. The summons ordered appellant to appear in court on November 29, 1989. Appellant never received the summons. The summons came back on December 4, 1989 with a notation "not enough time for service."

No further action appears in the file until March 13, 1990, when the prosecutor requested issuance of a warrant to arrest appellant. The March 26, 1990 return of the warrant indicates appellant was arrested on March 23, 1990. On March 26, 1990, appellant appeared in court with counsel and pleaded not guilty to the charges in the indictment.

On May 29, 1990, appellant moved to suppress the audiotaped confession and a written confession he made on August 22, 1989 to Scioto County Sheriff's Department Investigator Ken Days. The court held a hearing on the motion on June 5, 1990.

Appellant testified he voluntarily went to talk with Days about the charges on August 22, 1989. Appellant further testified that when Days advised him of his right to an attorney, appellant said, "Well, get him in here." Days did not find appellant an attorney or cease questioning appellant. Appellant contends Days threatened to put appellant's stepdaughter in a home if he did not confess to the crimes. Appellant further contends Days acted violently during the questioning—jumping up, scooting chairs around in the room, and hitting a table. Appellant's wife, who was present during some of the questioning, corroborated the bulk of appellant's testimony.

Appellant's counsel asked the court to listen to the entire one-hour-and-twenty-minute audiotape of the confession, arguing in pertinent part:

"I have had the tape analyzed. It is turned off approximately eight times during the confession. There are conversations that went on while the tape recorder was turned off, and it was turned back on. I can point out—I can prove that my client can't read or write, so Mr. Days is writing this down, and reading it back to him. Mr. Days left out words that my client said that went to the heart of what this case is going to be about."

The court listened to a portion of the audiotaped confession. That portion spans pages eighteen through thirty-seven of the motion to suppress hearing transcript. On the last of those pages, appellant's counsel interrupted the audiotape to make a point. After some discussion among counsel, the court expressed reluctance about listening to the remaining portions of the audiotape. The court indicated it would prefer to listen to live testimony by appellant's witnesses.

The record transmitted on appeal does not contain a complete copy of the audiotape. We have only the nineteen pages of the motion to suppress hearing transcript containing the portion of the audiotape played in court. In that portion, Days asked appellant questions and discussed the *Miranda* rights contained on the written statement form. Appellant contends that portion of the

audiotape demonstrates Days led appellant to believe that by confessing to the crimes, appellant would receive "help" and would not be sent to prison:

"Q. When these things happened, what were you trying to do?

"A. I was just—I just, you know, needed affection, I guess.

"Q. You needed affection, or you were trying to show them affection?

"A. Trying to show them affection.

"Q. Do you understand this is the wrong way to do it?

"A. Yeah, I understand that now, and that's the reason *I was wanting to go to the doctors and stuff to get some help.*

" * * *

"A. There was something else I was wanting you to put on there.

"Q. Okay.

"A. *You was [sic] telling me that you knowed [sic] that I wasn't no [sic] crazy person or psychiatric person or anything like that, and the last thing we need is somebody else in prison.*

"Q. Okay. You and I were discussing whether somebody was crazy?

"A. Yeah.

"Q. Whether you were crazy.

"A. *And the last thing that you need is somebody else in prison. The only thing that I need is some help, and that's why I an here, just asking the judge for some help.*

"Q. Okay. What do you want some help for?

"A. I want some help to make sure this ain't going to happen again.

" * * *

"Q. * * * Who decides whether you get some help or not?

"A. The judge will.

"Q. All right. Is there any doubt in you mind about that?

"A. No, there ain't no doubt in my mind. I believe he will."

Days testified appellant did *not* request an attorney. Days further testified he did not threaten appellant during the questioning. Days noted he went to great lengths to tell appellant that neither Days nor the prosecutor's office could get appellant any "help."

The court overruled appellant's motion to suppress and tried the matter to a jury. The first witness was the SCCS caseworker who interviewed Jerri on

August 2, 1989, and Tracey on August 3, 1989 about the incidents. The caseworker testified the interviews substantiated the complaints she had received about the sexual abuse.

Jerri testified consistent with the bill of particulars. She noted that when she spent the night with her cousin Tracey near the end of July 1989, she woke up during the night to find appellant fondling her vagina. Jerri slapped appellant and he left the room. After Jerri told Tracey what happened, Tracey told Jerri that appellant had fondled Tracey, too.

When Tracey testified, she denied having Jerri spend the night, denied telling Jerri that appellant fondled her, and recanted what she told the caseworker about the sexual abuse. Tracey testified she is currently living with appellant. Tracey further testified she lied about the sexual abuse because appellant "whipped me all of the time, and he made me work."

Days testified that appellant confessed to the crimes. Days denied threatening appellant at the time of the confession. During cross-examination, appellant's counsel asked Days whether he is presently barred from the Scioto County Jail. The prosecutor objected, claiming the question was irrelevant. Appellant's counsel argued the question is relevant because issues have been raised about the way Day interrogates inmates and other people suspected of committing crimes. The court sustained the prosecutor's objection to the question.

Appellant called various witnesses to the stand to testify about possible reasons why false allegations might have been made against him. Appellant caught his wife in bed with another man just two days before the allegations. Animosity exists between appellant and Jerri's stepfather, the man who made the sexual abuse complaint. One caseworker testified that when she interviewed Tracey at school, Tracey said no abuse ever occurred.

Appellant testified he was taking Valiums at the time he confessed. He further testified he confessed after Days threatened to take his stepdaughter away if he did not confess. On cross-examination, appellant acknowledged he managed to deny some of the allegations Days made during the interview. Appellant further acknowledged that his family was separated at that point not due to the sexual abuse allegations, but rather due to his wife's adultery.

Appellant's counsel moved the court to admit the audiotaped confession into evidence. The court overruled the motion, noting that if the audiotape is to be used for impeachment, it may only be used if an inconsistency exists.

The state presented one witness on rebuttal. Shawnee Mental Health Center Caseworker Rolland Williston testified he talked with appellant's wife in connection with his counselling of Tracey. Williston testified appellant's wife told him Tracey had indicated to her that some abuse had occurred. Appellant objected to

the testimony as being double hearsay. The court overruled appellant's objection.

The jury found appellant guilty as charged. The court sentenced appellant to two years on each gross sexual imposition conviction and seven to twenty-five years on the rape conviction.

## I

In his first assignment of error, appellant asserts the court erred by failing to grant his motion to suppress the written and audiotaped confessions. Appellant argues his testimony demonstrates Days refused his request for an attorney, and Days made inappropriate threats and promises to induce the confession. In particular, appellant argues Days led him to believe that a confession would lead to "help."

In a hearing on a motion to suppress evidence, the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses. *State v. Warren* (Aug. 12, 1991), Hocking App. No. 90CA7, unreported, 1991 WL 156521. Thus, the credibility of witnesses during a motion to suppress evidence hearing is a matter for the trial court. A reviewing court should not disturb the trial court's findings on the issue of credibility. *State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583; *State v. Tutt* (Apr. 14, 1986), Warren App. No. CA85–09–056, unreported, 1986 WL 4506. Accordingly, in our review we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. DePalma* (Jan. 18, 1991), Ross App. No. 1633, unreported, 1991 WL 13824. Accepting these facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the appropriate legal standard. See *State v. Shelpman* (May 23, 1991), Ross App. No. 1632, unreported, 1991 WL 87312; *State v. Simmons* (Aug. 30, 1990), Washington App. No. 89CA18, unreported, 1990 WL 127065.

It is fundamental that the police must terminate the custodial interrogation of a suspect if the suspect requests the assistance of counsel. *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Once an individual in custody invokes his right to counsel, the interrogation "must cease until an attorney is present." *Id.* See, also, *Minnick v. Mississippi* (1990), 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489. Also, a defendant's confession must be voluntary, and not the product of improper inducement.

Appellant also cites *State v. Edwards* (1976), 49 Ohio St.2d 31, 3 O.O.3d 18, 358 N.E.2d 1051, vacated as to death penalty, *Edwards v. Ohio* (1978), 438

U.S. 911, 98 S.Ct. 3147, 57 L.Ed.2d 1155, where the court held at paragraph two of the syllabus:

"In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances, including age, mentality, and prior criminal experience of the accused; the length, intensity and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement."

Appellant correctly notes a court must consider the totality of the circumstances when determining whether a confession was voluntary. See, also, *State v. Wiles* (1991), 59 Ohio St.3d 71, 81, 571 N.E.2d 97, 112; *State v. Brewer* (1990), 48 Ohio St.3d 50, 58, 549 N.E.2d 491, 499; and *State v. Barker* (1978), 53 Ohio St.2d 135, 7 O.O.3d 213, 372 N.E.2d 1324.

Appellant notes a similarity between the facts in the case *sub judice* and the facts in *State v. Booher* (1988), 54 Ohio App.3d 1, 560 N.E.2d 786. In *Booher*, the trial court considered the undertone of "help" together with other circumstances and concluded the confession was "not a product of an essentially free and unconstrained choice by the defendant." The court of appeals affirmed the suppression of Booher's confession.

Appellee agrees courts must examine the totality of the circumstances when determining whether a confession is a product of free will. Appellee notes that although in *Booher* the police and the prosecutor told the defendant dozens of times that they wanted to help him, in the case *sub judice* the trial court found Days made no such representations or promises to appellant. Appellee further notes Days told appellant that only the judge can decide what happens.

In *State v. Awan* (1986), 22 Ohio St.3d 120, 123, 22 OBR 199, 202, 489 N.E.2d 277, 279, the court emphasized that appellate courts must defer conflicts in the evidence to the trier of fact who had the opportunity to hear the witnesses and observe their demeanor. The court wrote at 123, 22 OBR at 202, 489 N.E.2d at 280:

"The choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact."

In the case *sub judice*, conflicting evidence was adduced at the suppression hearing. The investigating officer testified appellant did not request the assistance of counsel. The investigating officer also told appellant that only the judge can decide what happens. Accordingly, we must defer to the trial court's choice to believe the investigating officer that appellant did not request counsel. We agree with the trial court's conclusion that appellant's confession was voluntary.

In *State v. Dailey* (1990), 53 Ohio St.3d 88, 91–92, 559 N.E.2d 459, 463, the court wrote:

"A suspect's decision to waive his Fifth Amendment privilege is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct. *Colorado v. Spring* [1987], *supra*, 479 U.S. [564] at 574, 107 S.Ct. [851] at 857 [93 L.Ed.2d 954 at 965]. See, also, *State v. Black* (1976), 48 Ohio St.2d 262, 2 O.O.3d 422, 358 N.E.2d 551, paragraph four of the syllabus, vacated in part (1978), 438 U.S. 910, 98 S.Ct. 3134, 57 L.Ed.2d 1154. Thus, coercive police activity is a necessary predicate to finding that a confession is not voluntary within the Fifth Amendment, on which *Miranda* was based. *Colorado v. Connelly* (1986), 479 U.S. 157, 170, 107 S.Ct. 515, 523–24, 93 L.Ed.2d 473." See, also, *State v. Cooey* (1989), 46 Ohio St.3d 20, 544 N.E.2d 895.

When we view the totality of the circumstances surrounding appellant's confession, we find no evidence that "appellant's will was overborne or his capacity for self-determination impaired." We find no threats or promises made by Days which require the conclusion that appellant's confession was the product of improper inducement. Again, during the interrogation appellant acknowledged he understood the judge could decide whether he would receive any "help."

Therefore, we believe the evidence reveals appellant made a knowing, intelligent and voluntary waiver of his constitutional rights. We find appellant's statements were properly admitted into evidence.

Accordingly, based upon the foregoing reasons appellant's first assignment of error is overruled.

## II

In his second assignment of error, appellant asserts the trial court erred by refusing to admit the audiotape into evidence and by refusing to play the entire audiotape to the jury. Appellant contends the court should not have permitted the prosecutor to use only the written form of his confession, but should have admitted the entire confession—both the four-page written portion and the eighty-minute audiotaped portion. Appellant argues the audiotape is the best evidence of the confession. Appellant further argues the audiotape would have demonstrated to the jury that appellant was confused and uncertain during the confession, and would have demonstrated to the jury that Days suggested to appellant that the court would treat him leniently.

Appellee contends the court correctly refused to admit the audiotape unless appellant could demonstrate the audiotape was inconsistent with the written confession. Appellant did not demonstrate that any inconsistencies exist. Appel-

lee notes the court permitted appellant to cross-examine Days about the confession, and permitted appellant to present impeachment evidence. -

We agree with appellee that the written confession and the audiotaped confession are not two parts of the same confession. Appellant was well aware that he was making a written confession, and he was well aware that he was making an audiotaped confession. Each confession is complete by itself.

■ Appellant argues Evid.R. 1002, the best evidence rule, requires admission of the audiotape. We disagree. The rule provides:

"To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio."

The rule would apply if the state was attempting "to prove the content of a writing, recording, or photograph." In the case *sub judice*, however, the state made no attempt to prove what was on the audiotape. Rather, the state presented Days' testimony about the confession, and presented the written confession itself. Neither Days' testimony nor the written confession was dependent upon the existence of the audiotaped confession.

We recently encountered this issue in *State v. Waughtel* (Oct. 23, 1991), Scioto App. No. 90 CA 1918, unreported, 1991 WL 224182. We held, in essence, that a litigant cannot invoke Evid.R. 1002 unless the opposing party is attempting to prove the content of a writing, recording, or photograph. In *Waughtel* we noted the federal counterpart to Evid.R. 1002 has been interpreted in a similar manner. See 11 Moore's Federal Practice (1989) X–10, Section 1002.02; *Meyers v. United States* (D.C.Cir.1948), 171 F.2d 800, 812. We also noted that other states have reached similar conclusions. See, *e.g.*, *McElroy v. Brisco* (Miss.1985), 479 So.2d 706, 709; *People v. Kulwin* (1951), 102 Cal.App.2d 104, 107–108, 226 P.2d 672, 674.

Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.

### III

■ In his third assignment of error, appellant asserts the trial court improperly admitted hearsay evidence when it permitted Jerri to testify that Tracey told Jerri that appellant had fondled Tracey, too. Appellant asserts the admission of the statement "directly impacted on appellant's guilt or innocence on one of the charges of gross sexual imposition." The court agreed with appellee that Jerri's testimony falls within Evid.R. 801(D)(1)(c). The rule excludes certain statements from the definition of "hearsay":

"(D) Statements which are not hearsay. A statement is not hearsay if:

"(1) Prior statement by witness. *The declarant testifies at the trial or hearing and is subject to cross-examination* concerning the statement, *and the statement is * * * (c) one of identification* of a person soon after perceiving him, if the circumstances demonstrate the reliability of the prior identification." (Emphasis added.)

In order for Evid.R. 801(D)(1)(c) to apply, the declarant must testify at trial and be subject to cross-examination concerning the statement. Additionally, the statement must be one of "identification of a person". and must have been made "soon after perceiving" the person.

In the case *sub judice*, appellant argues that the declarant, Tracey, had not yet testified at trial when the court admitted the identification statement. We know Evid.R. 801(D)(1)(c) permits identification statements only when the declarant testifies at trial and is subject to cross-examination. One critical question in this assignment of error is whether the declarant must testify *before* the identification statement may be admitted, or if the prosecutor's promise that Tracey would testify later during the trial was sufficient to permit admission of the identification statement.

In *State v. Boston* (1989), 46 Ohio St.3d 108, 545 N.E.2d 1220, modified by *State v. Dever* (1992), 64 Ohio St.3d 401, 596 N.E.2d 436,[1] the court commented on Evid.R. 801(D)(1)(c). The court's comments indicate trial courts may now admit identification statements even if the declarant has not yet testified at trial. The *Boston* court wrote 46 Ohio St.3d at 124, 545 N.E.2d at 1236:

"The Staff Note to Evid.R. 801(D)(1)(c) indicates that this rule extends the principle recognized in Ohio in *State v. Lancaster* (1971), 25 Ohio St.2d 83, 54 O.O.2d 222, 267 N.E.2d 291. Paragraph five of the syllabus in *Lancaster* states:

" 'Prior identification of the accused may be shown by the testimony of the identifier, or by the testimony of a third person to whom or in whose presence the identification was made, *where the identifier has testified and is available for cross-examination,* not as original, independent or substantive proof of the identity of the accused as a guilty party, but as corroboration of the testimony of the identifying witness as to the identity of the accused.' (Emphasis added.)

"Further, the Staff Note to the rule indicates that ' * * * [t]he rationale for the rule is that the perception made nearer the event is at least as likely, if not more likely, to be accurate than a subsequent identification in the courtroom. * * * [T]he trial judge [is required] to determine whether the circumstances under

---

1. The modification does not affect our discussion of *Boston*.

which the identification was made demonstrate reliability of the prior identification. * * * '

"Thus, a prior identification that is found reliable by a trial judge falls outside the hearsay rule *if it is shown that the child-identifier, either at trial or a hearing, had been or is subject to cross-examination* under oath concerning the identification statement and the child responds willingly to questions about the previous identification. If these conditions are met and the judge finds the statement of prior identification reliable, then the statement of the declarant can be admitted at trial through a third person to whom or in whose presence the identification was made. See, also, R.C. 2945.55." (Emphasis added.)

In *State v. Lancaster* (1971), 25 Ohio St.2d 83, 54 O.O.2d 222, 267 N.E.2d 291, paragraph five of the syllabus, as quoted above in *Boston,* the court permitted the identification statement only where the declarant had already testified at trial and was available for cross-examination concerning the statement. In *Boston,* however, the court did not require both prior testimony and availability for cross-examination. The court in *Boston* permitted the identification statement either where the declarant already testified *or* where the declarant was available for cross-examination. This language in *Boston* permits identification statements even when the declarant has not yet testified at trial.

The next paragraph in *Boston* went one step further and stated that identification statements are admissible pursuant to Evid.R. 801(D)(1)(c) even if the declarant does *not* testify at trial. The court wrote in 46 Ohio St.3d at 124, 545 N.E.2d at 1236:

"Accordingly, admitting a child's out-of-court identification of the perpetrator under Evid.R. 801(D)(1)(c), *without the child's testimony at trial,* requires the trial judge to conduct a voir dire examination of the child at which the child, under oath, is subject to cross-examination concerning her identification and responds willingly to questions about her identification." (Emphasis added.)

*Boston* erased any doubt about whether identification statements are admissible prior to the time the declarant testifies at trial. The statements are admissible regardless of whether the declarant has already testified.

In *United States v. Owens* (1988), 484 U.S. 554, 561, 108 S.Ct. 838, 844, 98 L.Ed.2d 951, 959, when confronting the issue of whether a declarant's memory loss prevents the declarant from being "subject to cross-examination," the court commented on the meaning of the phrase as follows:

"It seems to us that the more natural reading of the 'subject to cross-examination concerning the statement' includes what was available here. Ordinarily a witness is regarded as 'subject to cross-examination' when he is placed on the stand, under oath, and responds willingly to questions."

Although the *Owens* court appeared to construe the federal counterpart to Evid.R. 801(D)(1)(c) as *requiring* the declarant to be placed on the witness stand under oath, the court did not require the declarant to be placed on the witness stand under oath prior to the admission of the identification statement.

In accord with *Boston* and *Owens*, we find the fact that the declarant, Tracey, had not yet testified did not prevent the trial court from admitting Jerri's testimony about Tracey's statement.

Next, we will address the question of whether Jerri's testimony that Tracey said appellant had fondled her, too, is "one of identification of a person." Here we have difficulty. We doubt the state presented the testimony in an effort to identify appellant. The record transmitted on appeal contains no allegation or hint that someone other than appellant committed the sexual abuse against Tracey. Tracey has known appellant, her stepfather, for years.

In *Boston*, the court reviewed various rules of evidence and established guidelines for Ohio courts to use when dealing with child sexual abuse cases. After noting problems with the use of Evid.R. 803(4) in child abuse cases,[2] the court, in 46 Ohio St.3d at 124, 545 N.E.2d at 1236, suggested employing Evid.R. 801(D)(1)(c) under certain circumstances in child abuse cases:

"We suggest a better way of admitting a child's statements identifying the perpetrator of child abuse can be found, *under certain circumstances*, in Evid.R. 801(D)(1)(c) rather than Evid.R. 803(4)." (Emphasis added.)

Later, at 126, 545 N.E.2d at 1238, the court noted Evid.R. 801(D)(1)(c) may be used in child abuse cases under proper circumstances:

"*Under proper circumstances*, Evid.R. 801(D)(1)(c) may be used to admit the out-of court statement of a child declarant identifying, to a third person, the perpetrator of alleged child abuse." (Emphasis added.)

The *Boston* court did not discuss what "certain" or "proper" circumstances would permit the use of Evid.R. 801(D)(1)(c) in child abuse cases. Consequently, we can only assume the *Boston* court referred to prior case law when it stated that "under certain circumstances" and "under proper circumstances" the rule

---

**2.** The *Boston* court questioned whether Evid.R. 803(4), the hearsay exception involving statements made for purposes of medical diagnosis or treatment, should be used where the declarant is a child. The rationale behind the rule—the declarant's self-interest in telling the truth when seeking a medical diagnosis or treatment—fails when the declarant is a young child. The *Boston* court wrote in 46 Ohio St.3d at 121, 545 N.E.2d, at 1234:

"In order to comply with Evid.R. 803(4), the child's statement must have been motivated by her desire for medical diagnosis or treatment. Oftentimes the child appears too young to be able to (1) formulate her medical problem, (2) communicate this to another person, who is frequently a stranger, and (3) transmit this information for the purpose of medical diagnosis or treatment."

may be applied in child abuse cases. The *Boston* court did not expressly expand, enlarge, modify, or qualify the application of Evid.R. 801(D)(1)(c).

Despite the fact *Boston* merely suggested the application of Evid.R. 801(D)(1)(c) under proper circumstances, and did not change the definition of "proper circumstances," a difference exists between the thirteen pre-*Boston* and the ten post-*Boston* Ohio appellate court cases citing Evid.R. 801(D)(1)(c). The pre-*Boston* cases generally involved identifications made by strangers to law enforcement personnel during the course of investigations conducted shortly after the crime.[3] The stranger often, but not always, identified the defendant among others in a line-up or photo array. In the pre-*Boston* cases, the identifications were necessary to prove no other person committed the crime.

By contrast, the majority[4] of the post-*Boston* cases citing Evid.R. 801(D)(1)(c) involved close relatives—two fathers,[5] three stepfathers,[6] and one

---

**3.** The pre-*Boston* stranger-identification cases include: *State v. McGee* (Oct. 12, 1988), Lorain App. No. 4338, unreported, 1988 WL 107031; *State v. Blanks* (Jan. 14, 1988), Cuyahoga App. No. 52543, unreported, 1988 WL 3746; *State v. Robinson* (Dec. 30, 1987), Summit App. No. 13150, unreported; *Hillsboro v. Cox* (Aug. 19, 1987), Highland App. No. 620, unreported, 1987 WL 33221; *State v. Vanatter* (June 11, 1987), Franklin App. No. 86AP–1043, unreported, 1987 WL 12707; *State v. Daniels* (May 15, 1985), Lorain App. No. 3694, unreported, 1985 WL 10756; *State v. Davis* (May 24, 1984), Cuyahoga App. No. 47622, unreported, 1984 WL 5542; *State v. Coleman* (May 5, 1983), Cuyahoga App. No. 45551, unreported, 1983 WL 2963; *State v. Taylor* (Mar. 31, 1983), Cuyahoga App. No. 45374, unreported, 1983 WL 5896; *State v. Wilson* (1982), 8 Ohio App.3d 216, 8 OBR 288, 456 N.E.2d 1287; and *State v. Wainwright* (Mar. 11, 1982), Cuyahoga App. No. 43798, unreported, 1982 WL 5226.

One pre-*Boston* case mentioned Evid.R. 801(D)(1)(c) in a situation where the declarant and the defendant were members of the same family. In that case, *State v. Mowery* (Aug. 25, 1981), Franklin App. No. 80AP–604, unreported, 1981 WL 3428, the court merely noted it was arguable that the declarant's identification of her husband, the defendant, might be admissible under the rule. For reasons we state in our decision, we find no merit to that argument.

In a second non-stranger case, *Quick Air Freight, Inc. v. Teamsters Local Union No. 413* (1989), 62 Ohio App.3d 446, 575 N.E.2d 1204, the declarant-employees identified striking union drivers.

Our research was uncovered no other pre-*Boston* Ohio cases citing Evid.R. 801(D)(1)(c).

**4.** Only one of the ten post-*Boston* cases involved the classic stranger-identification situation. See *State v. Chinn* (Dec. 27, 1991), Montgomery App. No. 11835, unreported, 1991 WL 289178. Three others involved identifications of acquaintances or neighbors by adult declarants. See *State v. Samilton* (Apr. 16, 1992), Cuyahoga App. No. 60265, unreported, 1992 WL 80046; *State v. Lumpkin* (Oct. 25, 1991), Greene App. No. 90CA82, unreported, 1991 WL 216919; *State v. Lee* (May 24, 1990), Franklin App. No. 89AP–1036, unreported, 1990 WL 70962.

**5.** The two cases involving fathers are *State v. Bugh* (Mar. 14, 1991), Carroll App. No. 594, unreported, 1991 WL 38013, and *State v. Stokes* (1991), 72 Ohio App.3d 735, 596 N.E.2d 480.

**6.** The three cases involving stepfathers are *State v. Gallaway* (Nov. 8, 1991), Lucas App. No. L–90–056, unreported, 1991 WL 254216; *State v. Burkhart* (Apr. 15, 1991), Clermont App. No. CA90–04–040, unreported, 1991 WL 57104; and *State v. Wilcher* (Mar. 14, 1990), Summit

uncle[7]—of child victim-declarants. The post-*Boston* identifications generally involved identifications made by children to mothers or doctors weeks or months after the crime. The child observed neither the defendant nor the defendant's photograph during the identification. In the post-*Boston* cases, the identifications addressed not the identity of the defendant, but rather addressed the fact a crime was committed.

Perhaps the post-*Boston* shift in Ohio appellate case law occurred due to the fact that after commenting on the use of Evid.R. 801(D)(1)(c), the *Boston* court exercised its inherent judicial authority to create a new common-law rule of evidence. Post-*Boston* courts might have confused this new rule of evidence with Evid.R. 801(D)(1)(c). The *Boston* court wrote in 46 Ohio St.3d at 127, 545 N.E.2d at 1239:

" * * * We are still faced with the problem of having no workable exception to hearsay in child abuse cases where no other exception is applicable. Until such a rule is approved, *we, pursuant to our inherent judicial powers, hold* that an out-of-court statement of an allegedly abused child of tender years, including identification of a perpetrator, made to a qualified expert in child abuse, is admissible if the expert has independent evidence of physical or emotional abuse of the child, the child has no apparent motive for fabricating the statement and the child has been found unavailable after a good-faith effort to produce the child in court." (Emphasis added.)

Although the new common-law rule requires an identification of the perpetrator, the new common-law rule differs significantly from Evid.R. 801(D)(1)(c). One difference lies in the fact that whereas Evid.R. 801(D)(1)(c) contemplates a statement of identification and nothing more, *Boston*'s new common-law evidence rule contemplates a statement that a crime has occurred. The requirement that the statement include an identification of the perpetrator is peripheral, not central, to the new common-law rule.[8]

When we examine case law commenting on the theory behind Evid.R. 801(D)(1)(c), we have little doubt that Evid.R. 801(D)(1)(c) should not be applied

---

App. No. 14236, unreported, 1990 WL 28111.CA90–04–040, unreported, 1991 WL 57104; and *State v. Wilcher* (Mar. 14, 1990), Summit App. No. 14236, unreported, 1990 WL 28111.

**7.** The case involving an uncle is *State v. Leonard* (Nov. 6, 1989), Montgomery App. No. 10973, unreported, 1989 WL 135306.

**8.** After the trial in the instant case, Evid.R. 807 became effective. This rule provides a hearsay exception for statements by children in child abuse cases. We note that the new rule applies to out-of-court statements made by children under twelve years of age at the time of the trial, where there is independent proof of the sexual act or act of physical violence.

in the case *sub judice,* and perhaps should not have been cited or applied in the majority of the post-*Boston* Ohio appellate cases citing the rule.

The majority of Evid.R. 801(D)(1)(c) cases from other jurisdictions does not involve identifications made by declarants closely related to the defendant. See *Owens, supra; United States v. Hines* (C.A.11, 1992), 955 F.2d 1449; *United States v. Simmons* (C.A.2, 1991), 923 F.2d 934; *United States v. O'Malley* (C.A.7, 1986), 796 F.2d 891; *Hosford v. State* (Miss.1990), 560 S.2d 163; *State v. Spence* (1989), 182 W.Va. 472, 388 S.E.2d 498; *People v. Flores* (1989), 128 Ill.2d 66, 131 Ill.Dec. 106, 538 N.E.2d 481; *Jimpson v. State* (Miss.1988), 532 So.2d 985; *Livingston v. State* (Miss.1988), 519 So.2d 1218; *State v. Harris* (Mo.1986), 711 S.W.2d 881; *State v. McClendon* (1986), 199 Conn. 5, 505 A.2d 685. All of those cases except *Hosford* involved identifications made by unrelated adults during line-ups or photo arrays.[9]

In one recent Ohio case, *Lee, supra,* the Tenth District Court of Appeals cautioned against allowing identification statements that might be perceived by the jury as being evidence that a crime took place:

"To the extent such statements by the victim concerned only the identity of defendant, no objection would have been proper. Evid.R. 801(D)(1)(c). However, beyond identifying defendant as the perpetrator, the victim's out-of-court statements also could have been perceived by the jury as evidence that a theft and a burglary had been committed. Such evidence is unquestionably hearsay." *Lee, supra,* at 5.

In the case *sub judice,* no substantial question existed concerning the identity of the perpetrator. Appellee undoubtedly offered Jerri's testimony about Tracey's statement in an effort to prove a crime took place, not in an effort to identify appellant.

In *Owens, supra,* the United States Supreme Court reviewed the legislative history of Fed.R.Evid. 801(D)(1)(c). We note the legislative history of the federal rule, as well as the premise behind the rule, support a view that the rule should not be employed under circumstances where no real question of identity of the defendant exists. The *Owens* court wrote in 484 U.S. at 562, 108 S.Ct. at 844, 98 L.Ed.2d at 960:

"The premise for Rule 801(D)(1)(c) was that, given adequate safeguards against suggestiveness, out-of-court identifications were generally preferable to courtroom identifications. Advisory Committee's Notes on Rule 801, 28 U.S.C.App., p.

---

9. In *Hosford,* the Mississippi court permitted testimony by a counselor that the defendant's eight-year-old stepdaughter stated he committed sexual battery against her. The court held the testimony was admissible pursuant to Evid.R. 801(D)(1)(b) (not the identification rule) to rebut a charge of recent fabrication or confusion after the victim had testified.

717. Thus, despite the traditional view that such statements were hearsay, the Advisory Committee believed that their use was to be fostered rather than discouraged. Similarly, the House Report on the Rule noted that since, '(a)s time goes by, a witness' memory will fade and his identification will become less reliable,' minimizing the barriers to admission of more contemporaneous identification is fairer to defendants and *prevents 'cases falling through the cracks because the witness can no longer recall the identity of the person he saw commit the crime.'*" (Emphasis added.)

There exists no danger that the case *sub judice* might "fall through the cracks" due any inability on Tracey's part to identify the person she saw commit the crime against her. That person is her stepfather. It is highly unlikely she forgot his identity.

In *Harris, supra,* the Missouri Supreme Court noted a danger inherent in the use of Evid.R. 801(D)(1)(c)—the danger that the stature and character of the witness will bolster the credibility of the declarant. The *Harris* court wrote in 711 S.W.2d at 883:

"The underlying concern appears to have been not so much the hearsay quality of the testimony but the fact that it was employed for the purpose of unprovoked bolstering of the identifying witnesses' testimony. * * *

" * * * [W]e believe the practical effect on a jury of the third person's hearsay corroboration of the identifying witness's testimony concerning the extrajudicial identification is to lend substantial credence to the identifying witness's testimony, and such *credence is principally derived from the stature and character of the third person rather than the substantive basis for his testimony.*" (Emphasis added.)

We agree that Evid.R. 801(D)(1)(c) should not be applied in circumstances outside the purpose of the rule. The rule should not be applied in circumstances where identity is not a true issue.

Last, we will discuss the question of whether Tracey's identification of appellant was made "soon after perceiving him." The crux of Evid.R. 801(D)(1)(c) enables prosecutors to present evidence that during or soon after a crime the victim identified the defendant as the perpetrator. In the pre–*Boston* Ohio appellate cases citing Evid.R. 801(D)(1)(c), and in the Evid.R. 801(D)(1)(c) cases from other jurisdictions, the declarant generally identified the defendant during a police line-up or photo array during the investigation occurring soon after the crime. By contrast, in the post-*Boston* Ohio appellate cases, the declarant generally identified the defendant weeks or months after the crime.

The question arises whether the "perceiving him" language refers to the actual crime, or whether it refers to any subsequent viewing of the defendant, whether

by line-up, by photograph, or by chance on the street corner. For purposes of our discussion, we will liberally construe the rule and assume the "perceiving" may occur either at the time of the crime or at a later time, such as during a line-up. We will also assume that the "perceiving him" can occur by means of a photograph in a photo array.[10]

Even assuming a liberal construction of the rule, we find that in the case *sub judice*, the record contains no evidence that Tracey made her statement to Jerri "soon" after Tracey "perceived" appellant. We have no precise evidence of when or where Tracey last saw appellant prior to Tracey's statements to Jerri. Likewise, we have no precise evidence of when appellant allegedly committed the crimes against Tracey.

We readily acknowledge that it really doesn't matter when Tracey last saw her stepfather prior to telling Jerri about the sexual abuse. Tracey knows her stepfather. Although one stranger's memory of the identity of another stranger will fade, a child's memory of her parent's identity will not fade at anywhere near the same rate.

The irrelevance of when Tracey last "perceived" her stepfather before telling Jerri about the crime underscores our belief that Evid.R. 801(D)(1)(c) should not be employed in cases where no true issue exists concerning the identity of the perpetrator. No one has alleged that someone other than appellant committed the crimes against Tracey. We believe that in the case *sub judice*, the state attempted to present the testimony not to prove who committed the offense, but rather to prove the fact an offense was committed.

Accordingly, based upon the foregoing reasons, we find the trial court incorrectly applied Evid.R. 801(D)(1)(c) and incorrectly admitted Jerri's testimony concerning the statement Tracey made to Jerri. We sustain appellant's third assignment of error.

## IV

In his fourth assignment of error, appellant asserts the trial court erred by limiting his cross-examination of Days. In particular, appellant asserts the trial court should have permitted him to ask Days whether he is presently barred from the Scioto County Jail. Appellant further asserts the trial court should have permitted him to ask Days why he is presently barred from the Scioto County Jail. Appellant contends issues have been raised about the way Days interrogates inmates and other people suspected of committing sex crimes.

---

10. We note the cases we have reviewed which cite Evid.R. 801(D)(1)(c) appear to agree with our assumptions in this regard. See, footnotes, *supra.*

In *State v. Ferguson* (1983), 5 Ohio St.3d 160, 5 OBR 380, 450 N.E.2d 265, the court held that the scope of cross-examination falls within the sound discretion of the trial court. See, also, *O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 17 O.O.3d 98, 407 N.E.2d 490. In *State v. Montgomery* (1991), 61 Ohio St.3d 410, 413, 575 N.E.2d 167, 171, the court followed established law on what constitutes an abuse of discretion:

"The term 'abuse of discretion' ' * * * connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. * * * ' *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 173, 404 N.E.2d 144, 149." See, also, *State v. Moreland* (1990), 50 Ohio St.3d 58, 552 N.E.2d 894.

In the case *sub judice*, we find no unreasonable, arbitrary, or unconscionable attitude evident from the trial court's decision to prevent appellant from asking Days whether he is presently barred from the Scioto County Jail.

Although appellant contends the question would have led to evidence that issues have been raised about the way Days interrogates people suspected of sex crimes, appellant does not contend the question would have led to evidence of how Days interrogated appellant.

Accordingly, based upon the foregoing reasons, we overrule appellant's fourth assignment of error.

V

█ In his fifth assignment of error, appellant asserts the trial court erred by admitting his written confession concerning acts he committed against Tracey. Appellant argues the court should have required evidence of a *corpus delicti* before admitting the confession evidence. Appellant notes that while on the witness stand during the trial below, Tracey recanted her previous allegations against appellant. Tracey testified she had lied earlier when she told others appellant had sexually abused her.

Appellant cites *State v. Edwards* (1976), 49 Ohio St.2d 31, 3 O.O.3d 18, 358 N.E.2d 1051, vacated as to death penalty, *Edwards v. Ohio* (1978), 438 U.S. 911, 98 S.Ct. 3147, 57 L.Ed.2d 1155, where the court held the state must produce some evidence in addition to a confession before the confession may be admitted into evidence. The court held in paragraph one of the syllabus:

"a. The corpus delicti of a crime is the body or substance of the crime, included in which are usually two elements: (1) the act and (2) the criminal agency of the act.

"b. There must be some evidence in addition to a confession tending to establish the corpus delicti, before such confession is admissible.

"c. The quantum or weight of such additional or extraneous evidence is not of itself required to be equal to proof beyond a reasonable doubt, not even enough to make a prima facie case. * * * "

In *State v. Van Hook* (1988), 39 Ohio St.3d 256, 261–262, 530 N.E.2d 883, 888–889, the court again noted the *corpus delicti* evidence need not rise to the level of a prima facie proof:

"We hasten to point out, however, that the standard of proof is not a demanding one. The prosecution need only adduce 'some proof * * * tending to prove [the act and its agency],' but not necessarily such evidence as would rise to the level of a prima facie case. * * * Also, as previously mentioned, Ohio does not require evidence upon all elements of the crime but only 'some material element.' "

In the case *sub judice*, we find the prosecution presented sufficient *corpus delicti* evidence to permit the introduction of appellant's confession. A caseworker testified her interview with Tracey substantiated a complaint she had received concerning appellant's sexual abuse of Tracey.

Accordingly, based upon the foregoing reasons, we overrule appellant's fifth assignment of error.

## VI

In his sixth assignment of error, appellant asserts the court erred by admitting double hearsay testimony by the state's rebuttal witness Rolland Williston. Williston testified in pertinent part as follows:

"A. Okay. To the best of my knowledge, that Tracey had indicated to mother, Debbie, that some years, and I believe it was two years, that Tracey had gone back to a place of residence during strawberry picking time, if memory is doing pretty well, and that there had been some kind of inappropriate touching at that time, that she went back supposedly to go to the bathroom, and that inappropriate touching, I believe, was indicated as a touching between the legs."

Appellee contends that although appellant objected to the question calling for the double hearsay, appellant failed to object to the Williston's answer. Thus, appellee argues, it is not clear whether appellant preserved the matter for review. Appellee additionally contends appellant failed to give two bases for his objection—one for each portion of the double hearsay. Last, appellee contends Williston's testimony is "so innocuous that it is hardly worth arguing about." We will address each of appellee's contentions in turn.

█ First, we find appellant adequately preserved the matter for review. Appellant alerted the court to the fact the question posed to Williston asked for double hearsay. Appellant thus gave the court an opportunity to prevent any error.

█ Second, we find no merit to appellee's contention that appellant should have given two bases for his objection—one for each portion of the double hearsay. The hearsay rule, Evid.R. 802, states that hearsay is not admissible. After a litigant raises the hearsay specter, however, common practice and common sense require the opposing party to overcome that specter by noting an applicable exception to the rule.

Last, we find no merit to appellee's contention that Williston's testimony is "so innocuous that it is hardly worth arguing about." The testimony involved hearsay. Appellee gives us no reason to declare that the hearsay falls within any one of the many exceptions to the hearsay rule.

Accordingly, based upon the foregoing reasons, we sustain appellant's sixth assignment of error.

## VII

█ In his seventh assignment of error, appellant contends the judgment with regard to the charges involving Tracey is against the manifest weight of the evidence. In particular, appellant notes Tracey recanted her allegations against appellant. With regard to the rape conviction, appellant notes the record contains no evidence that he penetrated Tracey.

█ When considering an appellant's claim that his conviction is against the weight of the evidence, we must defer to the trier of fact. In *State v. Thomas* (1982), 70 Ohio St.2d 79, 80, 24 O.O.3d 150, 151, 434 N.E.2d 1356, 1357, the court wrote:

"It is emphasized that an appellate court may not reverse the judgment of conviction unless reasonable minds could not fail to find reasonable doubt of the defendant's guilt. It is fundamental that the weight to be given the evidence and credibility of the witnesses are primarily for the trier of facts. * * *"

In *State v. Eskridge* (1988), 38 Ohio St.3d 56, 526 N.E.2d 304, paragraph two of the syllabus, the court held:

"A reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." See, also, *State v. Tyler* (1990), 50 Ohio St.3d 24, 553 N.E.2d 576; *State v. Jenks* (1991), 61 Ohio

St.3d 259, 574 N.E.2d 492; *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212.

In *State v. Otten* (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009, 1010–1011, the court discussed the manner in which courts should determine whether a criminal conviction is against the manifest weight of the evidence:

"In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."

Moreover, where there is substantial evidence upon which a jury has based its verdict, a reviewing court abuses its discretion in substituting its judgment for that of the jury as to the weight and the sufficiency of the evidence. *State v. Nicely* (1988), 39 Ohio St.3d 147, 529 N.E.2d 1236; *State v. Schiebel* (1990), 55 Ohio St.3d 71, 564 N.E.2d 54.

In view of our disposition of appellant's third and sixth assignments of error, after a review of the evidence adduced at trial we find the prosecution failed to present substantial competent and credible evidence upon which the trier of fact could have reasonably concluded that all elements of the offenses against Tracey (Counts One and Two of the indictment) had been proved beyond a reasonable doubt. As we discussed under appellant's third and sixth assignments of error, the court should not have permitted certain testimony which we believe was critical to the jury's decision to convict appellant. The court should not have permitted Jerri to testify that Tracey told her that appellant committed the crimes against her. The court also should not have permitted Williston to testify that Tracey's mother stated that Tracey said appellant committed the crimes. As to the offense against Jerri (Count Three of the indictment), however, we find the prosecution presented substantial competent and credible evidence upon which the trier of fact could have reasonably concluded that all elements of the offense had been proved beyond a reasonable doubt.

We find no merit to appellant's contention that a rape conviction requires proof of penetration. R.C. 2907.02(A)(1)(b) provides in pertinent part:

"(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when either of the following apply:

" * * *

"(b) The other person is less than thirteen years of age, whether or not the offender knows the age of such person."

The statute prohibits sexual conduct with children less than thirteen years of age. Appellant appears to believe sexual conduct involves penetration. Appellant is wrong. R.C. 2907.01(A) defines "sexual conduct" as follows:

" 'Sexual conduct' means vaginal intercourse between a male and female, and anal intercourse, fellatio, and cunnilingus between persons regardless of sex. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."

The statutory definition of "sexual conduct" includes not only penetration via vaginal or anal intercourse, but also includes fellatio and cunnilingus, neither of which require penetration.

Accordingly, based upon the foregoing reasons, we sustain appellant's seventh assignment of error concerning counts one and two of the indictment.

*Judgment affirmed in part,*
*reversed in part,*
*and cause remanded*
*for further proceedings*
*consistent with this opinion.*

GREY, J., concurs.

HARSHA, J., concurs in part and dissents in part.

GREY, Judge, concurring.

I concur in the opinion and judgment of reversal, but I would also add a comment about the second assignment of error regarding the taped confession. I concurred in *Waughtel, supra,* but I believe the issue here is different. In that case, there was a taped confession and a transcript of the tape, not as we have here, two confessions.

Appellee did have the right to introduce only the written confession, but appellant had a similar right to introduce the taped one. We are opening the door to mischief by holding that where a confession is taped and a second confession is obtained in writing, the original taped confession becomes inadmissible. Whether there are any inconsistencies is for the jury. The applicable rule here is Evid.R. 401, relevancy, not Evid.R. 1002, best evidence.

To my mind, one of the best protections to ensure the validity and accuracy of the subsequent written confession is the sure and certain knowledge by the officer taking the written confession that the original tape will always be admissible.

Thus, I concur.

HARSHA, Judge, concurring in part and dissenting in part.

I concur in portions of the principal opinion. However, with respect to the second assignment of error, I concur for reasons other than those stated in that opinion. With respect to the third, sixth and seventh assignment of error, I dissent.

In the second assignment of error, appellant asserts that the trial court erred by excluding his audiotaped confession from evidence. I do not find it necessary to determine whether the written and taped confessions are separate and distinct or two parts of one whole. Evid.R. 106 provides:

"When a writing or recorded statement or part thereof is introduced by a party, *an adverse party may require him at that time to introduce any other part or any other writing or recorded statement* which is otherwise admissable [*sic*] and which ought in fairness to be considered contemporaneously with it." (Emphasis added.)

Thus, I see no purpose to distinguish an unadmitted *portion* of a writing previously admitted from "any other writing or recorded statement." Clearly, it was an abuse of discretion not to admit the tape pursuant to Evid.R. 106. That having been said, I note that the taped confession was not proffered at trial as required by Evid.R. 103. The record on appeal contains only a portion of the recording. Absent such a proffer, we have no way to determine whether the exclusion was prejudicial. Appellant waived the error he asserts in the second assignment of error.

In resolving the issues raised by the third assignment of error, I find it unnecessary to apply the common-law hearsay exceptions announced in *State v. Boston* (1989), 46 Ohio St.3d 108, 545 N.E.2d 1220. These exceptions need not be employed (nor the exception currently found in Evid.R. 807) when another hearsay exception is applicable. I find that the testimony in question was admissible as an "excited utterance" under Evid.R. 803(2). In this case, the victim of Count Three of the indictment testified that when she told her cousin she had been molested, her cousin instinctively responded by saying that appellant had also molested her. In this regard, it is the revelation of molestation rather than the molestation itself which constitutes the startling event which resulted in the hearsay statement. As the statement was properly admissible under Evid.R. 803(2), we should not reverse the judgment of the trial court. While I agree that the court improperly ruled the testimony admissible under Evid.R. 801(D)(1)(c), we are not permitted to reverse a correct judgment because erroneous reasons were assigned as its basis. *Joyce v. Gen. Motors Corp.* (1990), 49 Ohio St.3d 93, 96, 551 N.E.2d 172, 174. Accordingly, I must dissent from the principal opinion's resolution of the third assignment of error as I would overrule it.

The sixth assignment of error asserts that the trial court improperly admitted double hearsay. See Evid.R. 805. The contested testimony consisted of a counselor testifying as to what the victim's mother told him the victim had told her. I agree with the conclusion in the principal opinion that hearsay evidence was improperly admitted below. I find, however, that appellant was not prejudiced by the admission due to the remaining overwhelming evidence of appellant's guilt as discussed in my resolution of the seventh assignment of error. Even if the hearsay evidence had been excluded, substantial evidence as to every element of all three offenses was presented by the state such that the jury could find appellant guilty beyond a reasonable doubt. Thus, I would overrule the sixth assignment of error as the improper admission did not alter the outcome of the trial.

In the seventh assignment of error, appellant argues that the judgment of conviction for rape was against the manifest weight of the evidence as there was no evidence of penetration. I agree with the principal opinion's conclusion that neither fellatio nor cunnilingus requires penetration. This conclusion, as to fellatio, is supported by State v. Long (1989), 64 Ohio App.3d 615, 618, 582 N.E.2d 626, 628, and given the definition of "cunnilingus," see Webster's New World Dictionary (3 College Ed. 1988) 338, I find Long equally applicable here.

The principal opinion sustains the seventh assignment of error based upon its resolution of the third and sixth assignments of error. Based upon the third and sixth assignments of error, the principal opinion holds that the state failed to present substantial, competent, credible evidence upon which the trier of fact could find all the elements of Counts One and Two proven beyond a reasonable doubt. I disagree. Appellant's written confession contained admissions of both rape and gross sexual imposition committed against his stepdaughter. The investigator for the prosecutor's office also testified that appellant admitted the incidents to him. I note that Count Three of the indictment is also established by this evidence. These sources are independent of the alleged errors in the third and sixth assignments of error. Accordingly, I find there was substantial, competent, credible evidence going to all the elements of all the offenses.

Based upon the foregoing, I would affirm the judgment of the trial court.