OPINION
{¶ 1} Defendant-appellant, Tony A. Brown, appeals from the judgment of the Franklin County Court of Common Pleas, whereby a jury convicted appellant of aggravated murder with a firearm specification, in violation of R.C. 2903.01 and 2941.145, respectively.
 {¶ 2} The Franklin County Grand Jury indicted appellant on the above charge on October 27, 2004. The charge stems from Kenneth Knox's death on April 15, 2003. Appellant pled not guilty, and a jury trial ensued.
 {¶ 3} At trial, Dolores Stephens testified to the following on behalf of plaintiff-appellee, the State of Ohio. On April 15, 2003, Stephens was remodeling a house and, during her lunch break at mid-afternoon, noticed a man, who was alone, fire five or six shots at another man, ultimately identified as Knox. Knox had been walking down a sidewalk away from the shooter after exiting the restaurant with two or three other people. After the shooting, the shooter ran from the scene. Stephens could not identify the shooter, but noticed that he was wearing a "black and white or gray and white jersey with [a] number on it." (Tr. at 88.)
 {¶ 4} Quincy Storey testified to the following on appellee's behalf. Storey and Knox went to H. Johnson's Bar-b-que restaurant during the afternoon of April 15, 2003. During that time, appellant and a companion also came into the restaurant. Storey knew appellant, who was wearing a sports jersey with the number "24." (Tr. at 132.)
 {¶ 5} Appellant and Knox had a conversation inside the restaurant. The conversation was not an "angry" one; appellant and Knox were not "arguing" or "fighting[.]" (Tr. at 116.) Appellant asked Knox to provide a phone number. Knox indicated that he did not have that information and stated that he and appellant would talk outside the restaurant.
 {¶ 6} After eating their lunch, Knox and Storey exited the restaurant and proceeded to lean against a wall of the restaurant. In the course of events, Storey again went inside the restaurant to talk to another friend. While inside, Storey noticed appellant and the companion "standing there, and the whole time [Storey wondered] why [appellant] didn't come out" because appellant had his food at the time. (Tr. at 119.) Storey exited the restaurant again, and Knox told Storey "that he just talked to a guy that just went inside [the restaurant] and * * * they [appellant and Knox] were going to fight about the situation." (Tr. at 119.) Storey then noticed that this person who spoke with Knox approached appellant inside the restaurant, but Storey did not know whether or not the person actually spoke with appellant.
 {¶ 7} Ultimately, appellant exited the restaurant. At the time, Knox was still standing against the restaurant wall, and appellant "spun around and started shooting." (Tr. at 123.) Appellant had a ".380 or a 9-millimeter" firearm, and appellant fired five or six shots at Knox, who was unarmed. (Tr. at 124.) Appellant fled after the shooting.
 {¶ 8} Subsequently, law enforcement spoke with Storey about the shooting and asked him to identify the shooter in a photo array. Storey identified appellant as the shooter. On re-direct examination, Storey stated that, when he spoke with Knox about the upcoming fight, Knox "told me what the situation was and he talked to the person who went * * * inside [the restaurant], talked to him before he went inside and told him that he was going to go ahead and let them [appellant and Knox] fight[.]" (Tr. at 153.)
 {¶ 9} Next, Gina Hawthorne-Hill testified to the following on appellee's behalf. Hawthorne-Hill and a friend went to H. Johnson's Bar-b-que restaurant during the afternoon of April 15, 2003. Outside the restaurant, Hawthorne-Hill's friend introduced her to Knox. Thereafter, while Hawthorne-Hill waited in line to order food, she noticed that Knox entered the restaurant and spoke with appellant, who was wearing a sports shirt and who was already in line to order food. Knox asked appellant, "when are you going to pay me my money back[?]" (Tr. at 170.) Hawthorne-Hill did not hear appellant's response, but after appellant gave a response, Knox stated: "[W]ell, okay, that's cool," and exited the restaurant. (Tr. at 170.) The conversation between Knox and appellant lasted less than two minutes. Afterwards, appellant received his food, exited the restaurant with another individual, and, outside the restaurant, appellant shot Knox. The individual who followed appellant out of the restaurant looked surprised after the shooting. Ultimately, appellant fled. Subsequently, law enforcement spoke with Hawthorne-Hill about the shooting and asked her to identify the shooter in a photo array. Hawthorne-Hill identified appellant as the shooter.
 {¶ 10} Columbus Police Detective Philip Walden testified on behalf of appellee that he investigated the scene of Knox's death. Detective Walden stated that he found shell casings for a nine-millimeter firearm at the scene.
 {¶ 11} Dr. Dorothy Dean formerly worked for the Franklin County Coroner's Office and testified on appellee's behalf. According to Dr. Dean, she performed an autopsy on Knox while she worked at the coroner's office. Dr. Dean testified that Knox "died from gunshot wounds of his torso, with perforations of his left lung and his heart[.]" (Tr. at 202.) Dr. Dean also testified that Knox's wounds would "be compatible with a 9-millimeter projectile[.]" (Tr. at 202.)
 {¶ 12} During its closing argument, appellee contended that appellant had the requisite "prior calculation and design" to commit aggravated murder. (Tr. at 253.) In doing so, appellee stated:
* * * [W]e heard testimony that in fact a third person enters. This is someone who hasn't been at the scene before, someone who has not been identified and is not identified here. But he says to * * * Knox * * * you're going to fight out here in a little bit with [appellant]. How does he know that?
How does he know that? Ask yourselves. (Tr. at 255.) Appellee also stated during the rebuttal portion of its closing argument that "prior calculation and design" for aggravated murder "doesn't have to be any certain amount of time that passes. It just can be the spur of the moment, * * * instantaneous reaction * * * where you commit the murder." (Tr. at 277.)
 {¶ 13} Before the jury began its deliberations, appellant's trial counsel requested that the trial court give jury instructions from the Ohio Jury Instructions manual in regards to the definition of "prior calculation and design" for aggravated murder and in regards to when a jury may infer a purpose to cause death from a deadly weapon. The trial court refused and gave its own version of the legal concepts.
 {¶ 14} Subsequently, the jury found appellant guilty as charged, and the trial court sentenced him accordingly. Appellant appeals, raising four assignments of error:
 Assignment of Error One
The admission of hearsay statements as to key issues deprived appellant of his right to a fair trial under the Ohio and Federal Constitutions.
 Assignment of Error Two
Trial counsel provided ineffective assistance when he failed to object to hearsay statements which provided the basis for the jury finding prior calculation and design, and by failing to object to the prosecutor's misstatement of the law in closing argument, resulting in the denial of the right to a fair trial and the right to effective assistance of counsel under the sixth
and fourteenth amendments to the United States Constitution as well as Article One, Section Ten of the Ohio Constitution.
 Assignment of Error Three
The trial court erred when it entered judgment against the defendant when the evidence was insufficient to sustain a conviction and was not supported by the manifest weight of the evidence.
 Assignment of Error Four
The trial court failed to give adequate jury instructions as requested by trial counsel.
 {¶ 15} In his first assignment of error, appellant asserts that we must reverse his conviction because the trial court admitted into evidence inadmissible hearsay. We disagree.
 {¶ 16} Hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Here, appellant argues that the trial court allowed Hawthorne-Hill to relay inadmissible hearsay when she testified that Knox asked appellant inside the restaurant, "when are you going to pay me my money back[?]" (Tr. at 170.) Appellant also contends that the trial court allowed Storey to relay inadmissible hearsay when he testified: (1) "[Knox] told me that he just talked to a guy that just went inside [the restaurant] and * * * they [appellant and Knox] were going to fight about the situation"; and (2) "[Knox] told me what the situation was and he talked to the person who went * * * inside [the restaurant], talked to him before he went inside and told him that he was going to go ahead and let them [appellant and Knox] fight[.]" (Tr. at 119, 153.)
 {¶ 17} However, appellant did not object to the above testimony and, therefore, waived all but plain error. State v.Barnes (2002), 94 Ohio St.3d 21, 27. Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." We notice plain error "`with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" Barnes at 27, quoting State v.Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. "By its very terms, the rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial." Barnes at 27. Under the plain error standard:
* * * First, there must be an error, i.e., a deviation from a legal rule. * * * Second, the error must be plain. To be "plain" within the meaning of Crim.R. 52(B), an error must be an "obvious" defect in the trial proceedings. * * * Third, the error must have affected "substantial rights." We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial. * * *
Barnes at 27.
 {¶ 18} We first address appellant's contention that Hawthorne-Hill relayed inadmissible hearsay when she testified that Knox asked appellant inside the restaurant, "when are you going to pay me my money back[?]" (Tr. at 170.) Generally, questions do not constitute hearsay. State v. Carter (1995),72 Ohio St.3d 545, 549; State v. Jackson (Feb. 20, 2001), Franklin App. No. 00AP-183. Questions are incapable of being proved either true or false and cannot be offered to prove the truth of the matter asserted. Carter at 549; Jackson. Thus, Hawthorne-Hill's testimony relaying the question that Knox posed to appellant does not constitute hearsay, and the trial court did not commit error, let alone plain error, in allowing the testimony.
 {¶ 19} We next address appellant's contention that Storey relayed inadmissible hearsay when he testified that: (1) "[Knox] told me that he just talked to a guy that just went inside [the restaurant] and * * * they [appellant and Knox] were going to fight about the situation"; and (2) "[Knox] told me what the situation was and he talked to the person who went * * * inside [the restaurant], talked to him before he went inside and told him that he was going to go ahead and let them [appellant and Knox] fight[.]" (Tr. at 119, 153.) In arguing against appellant's contentions, appellee alleges on appeal that the above statements were not offered to prove the truth of the matter asserted and, thus, do not constitute hearsay. Rather, appellee asserts that the statements explain why Storey remained at the restaurant for as long as he did. However, nothing in the record supports such an assertion. Instead, as evinced by appellee's closing argument, appellee provided the contents of the above statements for the truth of the matter asserted as evidence that appellant committed aggravated murder. Because these assertions attributed to the deceased, Knox, constitute out-of-court statements offered to prove the truth of the matter asserted, the statements constitute hearsay under Evid.R. 801(C). The mere fact that the declarant is dead does not, itself, render the declarations admissible. SeeBoley v. Kennedy, Crawford App. No. 3-02-35, 2003-Ohio-1663, at ¶ 24. In addition, Storey relayed double hearsay when he testified that Knox indicated that an individual had told Knox that he was going to "let" Knox and appellant fight. See Evid.R. 805.
 {¶ 20} Hearsay is inadmissible unless otherwise provided by an exclusion or exception to the hearsay rule. Evid.R. 802. Evid.R. 803(3) provides, in pertinent part:
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
* * *
(3) Then existing, mental, emotional, or physical condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed * * *.
 {¶ 21} "Under Evid.R. 803(3), statements of current intent to take future actions are admissible for the inference that the intended act was performed." State v. Hand, 107 Ohio St.3d 378,2006-Ohio-18, at ¶ 99. Here, we conclude that Evid.R. 803(3) deems admissible Storey's testimony that Knox indicated that "they [appellant and Knox] were going to fight about the situation." (Tr. at 119.) Through the statement, Knox revealed his "current intent to take future actions," and appellee used the statement as part of its theory that appellant killed Knox during the conflict that ultimately occurred outside of the restaurant.
 {¶ 22} Concluding as such, we must address Crawford v.Washington (2004), 541 U.S. 36, 53-54, where the United States Supreme Court held that it is a violation of the Sixth Amendment Confrontation Clause to admit "testimonial statements of a witness who did not appear at trial unless [the witness] was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." Here, appellant forfeited confrontation rights in regards to application of the hearsay rules by being responsible for Knox's unavailability. See Hand
at ¶ 105-106. Therefore, we may apply Evid.R. 803(3) to the above testimony without concern for appellant's confrontation rights. Id. Thus, we conclude that the trial court did not commit error, let alone plain error, in allowing the testimony concerning Knox's above statement.
 {¶ 23} Conversely, the portion of Storey's testimony that "[Knox] told me that he just talked to a guy that just went inside [the restaurant]" does not involve a "current intent to take future actions[.]" Thus, the testimony does not fall under the Evid.R. 803(3) hearsay exception, and we find no other hearsay exception for such testimony. As an example, the Evid.R. 803(2) excited utterance exception does not apply because appellee provided no foundation that Knox made the statement to Storey under "stress" of the particular event and not as "a result of reflective thought." State v. Taylor (1993),66 Ohio St.3d 295, 303; State v. Smith, Franklin App. No. 04AP-726, 2005-Ohio-1765 ("Smith I"), at ¶ 35. Rather, the only testimony regarding Knox's emotional state during the incident pertained to Knox and appellant's initial interaction in the restaurant, wherein Storey described that the initial interaction did not involve an "angry" conversation and that there was no "arguing" or "fighting[.]" (Tr. at 116.)
 {¶ 24} Lastly, we address the double hearsay from Storey's testimony that "[Knox] told me what the situation was and he talked to the person who went * * * inside [the restaurant], talked to him before he went inside and told him that he was going to go ahead and let them [appellant and Knox] fight[.]" (Tr. at 153.) Under Evid.R. 805, a hearsay exception must apply to both layers of double hearsay for the double hearsay to be admissible. Here, appellee provided no foundation at trial to trigger a hearsay exception for the admissibility of each layer of the double hearsay, and we find no exception. As an example, the individual's statement that he would let appellant and Knox fight would not be admissible under Evid.R. 801(D)(2)(e) as a statement of a co-conspirator because, absent the individual's statement itself, the record contains insufficient independent proof of a conspiracy. See Carter at 550 (holding that a statement is admissible under Evid.R. 801[D][2][e] upon a prima facie showing of a conspiracy by independent proof absent the statement that is sought to be admitted); State v. Boddie
(Sept. 6, 2001), Allen App. No. 1-2000-72. Additionally, the Evid.R. 803(3) existing state of mind exception would not apply to Knox's portion of the double hearsay because Knox did not state anything about his own state of mind; he was explicitly talking about the individual who stated that he was going to allow appellant and Knox to fight. See Quick Air Freight, Inc.v. Teamsters Local Union No. 413 (1989), 62 Ohio App.3d 446,454. Likewise, for the reasons noted above, the Evid.R. 803(2) excited utterance exception would not apply to Knox's portion of the double hearsay because appellee provided no foundation that Knox made the statement under "stress" of the particular event and not as "a result of reflective thought." Taylor at 303;Smith I at ¶ 35.
 {¶ 25} Nonetheless, we find that the admission of the above inadmissible hearsay did not affect the outcome of appellant's trial because, as we conclude below, other evidence supports appellant's aggravated murder conviction. See State v. Kasser
(Nov. 29, 2001), Franklin App. No. 01AP-260. Thus, we conclude that the trial court's allowance of the inadmissible hearsay did not rise to the level of plain error. For these reasons, we overrule appellant's first assignment of error.
 {¶ 26} We next address appellant's second assignment of error, in which appellant claims that his trial counsel rendered ineffective assistance. We disagree.
 {¶ 27} The United States Supreme Court established a two-pronged test for ineffective assistance of counsel.Strickland v. Washington (1984), 466 U.S. 668. First, the defendant must show that counsel's performance was outside the range of professionally competent assistance and, therefore, deficient. Id. at 687. Second, the defendant must show that counsel's deficient performance prejudiced the defense and deprived the defendant of a fair trial. Id. A defendant establishes prejudice if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.
 {¶ 28} Here, appellant first claims that his trial counsel rendered ineffective assistance by not objecting to the testimony discussed in his first assignment of error. However, we find that appellant's trial counsel was not deficient by failing to object to the admissible statements noted above. See Strickland at 687.
 {¶ 29} We further conclude that appellant's trial counsel's failure to object to the above inadmissible hearsay did not affect the outcome of appellant's trial because, as we conclude below, other evidence supports appellant's conviction. Thus, we find no prejudice from appellant's trial counsel's failure to object to the inadmissible hearsay. See Strickland at 687, 694.
 {¶ 30} Next, appellant claims that his trial counsel rendered ineffective assistance by not objecting to appellee's statement during the rebuttal portion of closing argument that "prior calculation and design" for aggravated murder "just can be the spur of the moment, * * * instantaneous reaction * * * where you commit the murder." (Tr. at 277.) Such a statement is incorrect because "prior calculation and design" does not involve a "spur of the moment" killing. See State v. Trewartha,165 Ohio App.3d 91, 2005-Ohio-5697, at ¶ 17, 29, 32, 35.
 {¶ 31} On appeal, appellee contends that "[i]t is entirely possible that [appellant's trial counsel] heard `can't' instead of `can,' which makes more sense in the context of the argument, and did not object for that reason." However, the record does not support appellee's assertion, and we must review the circumstances as the record reflects. See State v. Ishmail
(1978), 54 Ohio St.2d 402, 405-406. Nonetheless, we recognize that the trial court negated any prejudice from appellee's above-noted statement when it instructed the jury that: (1) "acting on the spur of the moment or after momentary consideration * * * is not sufficient" for "prior calculation and design" for aggravated murder; and (2) "[t]he evidence does not include * * * opening statements or closing arguments of counsel." (Tr. at 291, 286.) We presume that jurors follow the trial court's instructions. State v. Noling, 98 Ohio St.3d 44,2002-Ohio-7044, at ¶ 39. Thus, we find no prejudice from appellant's trial counsel's failure to object to appellee's above-noted statement on "prior calculation and design." SeeStrickland at 687, 694.
 {¶ 32} Therefore, based on the above, we conclude that appellant's trial counsel's performance did not rise to the level of ineffective assistance. As such, we overrule appellant's second assignment of error.
 {¶ 33} In his third assignment of error, appellant first contends that his aggravated murder conviction is based on insufficient evidence. We disagree.
 {¶ 34} Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict. State v. Thompkins (1997),78 Ohio St.3d 380, 386, superceded by constitutional amendment on other grounds as stated in State v. Smith (1997),80 Ohio St.3d 89 ("Smith II"). We examine the evidence in the light most favorable to the state and conclude whether any rational trier of fact could have found that the state proved beyond a reasonable doubt the essential elements of the crime. State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus, superseded by state constitutional amendment on other grounds inSmith II, and following Jackson v. Virginia (1979),443 U.S. 307; State v. Yarbrough, 95 Ohio St.3d 227, 2002-Ohio-2126, at ¶ 78. We will not disturb the verdict unless we determine that reasonable minds could not arrive at the conclusion reached by the trier of fact. Jenks at 273. In determining whether a conviction is based on sufficient evidence, we do not assess whether the evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. SeeJenks, paragraph two of the syllabus; Yarbrough at ¶ 79 (noting that courts do not evaluate witness credibility when reviewing a sufficiency of the evidence claim); State v.Lockhart (Aug. 7, 2001), Franklin App. No. 00AP-1138.
 {¶ 35} Based on our discussion in appellant's first assignment of error, we review appellant's aggravated murder conviction with no regard to Storey's testimony that: (1) "[Knox] told me that he just talked to a guy that just went inside [the restaurant]"; and (2) "[Knox] told me what the situation was and he talked to the person who went * * * inside [the restaurant], talked to him before he went inside and told him that he was going to go ahead and let them [appellant and Knox] fight[.]" (Tr. at 119, 153.) R.C. 2903.01(A) defines aggravated murder as "purposely, and with prior calculation and design, caus[ing] the death of another[.]"
 {¶ 36} First, we address the purpose to cause death element of aggravated murder. An individual acts purposely when he or she has a "specific intention to cause a certain result[.]" R.C.2901.22(A). A jury may infer a purpose to cause death from a defendant inflicting a wound upon a person with a deadly weapon in a manner calculated to kill. State v. Stallings (2000),89 Ohio St.3d 280, 291; State v. Wilson, Franklin App. No. 05AP-277, 2006-Ohio-643, at ¶ 38. In making such an inference, the jury may consider places where the bullets entered the victim and the resulting wounds. State v. Strodes (1976),48 Ohio St.2d 113, 116, death penalty vacated (1978), 438 U.S. 911;Wilson at ¶ 38. Here, the record establishes that appellant killed Knox with a firearm, a deadly weapon. See R.C.2923.11(B)(1). Knox died from gunshot wounds to the heart and lung, which are vital organs. Such evidence allowed the jury to infer that appellant purposely killed Knox. See Stallings at 291; Strodes at 116; Wilson at ¶ 38.
 {¶ 37} Next, we address the "prior calculation and design" element to aggravated murder. When the evidence reveals the presence of sufficient time and opportunity for the planning of a killing and the circumstances surrounding the killing show a scheme designed to implement the calculated decision to kill, a finding by the trier of fact of "prior calculation and design" is justified. State v. Robbins (1979), 58 Ohio St.2d 74, 79. Thus, "prior calculation and design" does not entail an instantaneous eruption of events. State v. Taylor (1997), 78 Ohio St.3d 15,22. Yet, under some circumstances, "prior calculation and design" can be found even when the defendant quickly conceived and executed the plan to kill within a few minutes. State v. Coley
(2001), 93 Ohio St.3d 253, 264. Indeed, no bright-line test or rigid set of factors defines the presence of "prior calculation and design," and the determination of whether a defendant acted with "prior calculation and design" ultimately "turns on the particular facts and evidence presented at trial." Taylor at 20.
 {¶ 38} In State v. Whitehead (Jan. 13, 1982), Hamilton App. No. C-810183, the First District Court of Appeals upheld a defendant's aggravated murder conviction. In Whitehead, the defendant and the victim had a confrontation and, after the parties separated, the defendant obtained a firearm from his vehicle. The defendant then returned to the scene of the confrontation, and the victim began to drive away from the scene. The defendant approached the victim's vehicle and fired two shots. The defendant fired one shot at "virtually point blank range through the front seat passenger window." The victim died, and the defendant left the scene. The record indicated that several minutes passed between the initial confrontation and the shooting. Likewise, the testimony established that the defendant was not angry when he obtained the firearm. In upholding the defendant's aggravated murder conviction, the appellate court concluded that "there was sufficient evidence of substantial probative value to support the jury's verdict that the [defendant] purposely, with prior calculation and design, caused" the victim's death. "The testimony in the record as to the amount of time between the [defendant's] fight with [the victim] and the shooting and the [defendant's] conduct during this time interval is sufficient to sustain the jury's finding of purpose, prior calculation and design."
 {¶ 39} Here, like Whitehead, appellant and Knox had an interaction inside the restaurant, but appellant fired no fatal shots at Knox during the interaction. Indeed, the interaction did not involve an "angry" conversation and there was no "arguing" or "fighting[.]" (Tr. at 116.) Knox exited the restaurant while appellant ordered food. Ultimately, appellant also exited the restaurant and, without warning, fired multiple shots at Knox. Appellant departed the scene, and Knox, who was unarmed, subsequently died. Examining the evidence in a light most favorable to the prosecution, pursuant to Jenks andYarbrough, and recognizing that the sequence of events here is similar to that in Whitehead, we conclude that the record establishes that Knox's death did not result from an instantaneous eruption of events, but that appellant murdered Knox with "prior calculation and design."
 {¶ 40} Accordingly, based on the above, we conclude that sufficient evidence supports appellant's aggravated murder conviction. The above evidence also sufficiently establishes that, in accordance with the firearm specification in R.C.2941.145, appellant displayed and used a firearm while committing the aggravated murder.
 {¶ 41} Next, appellant argues in his third assignment of error that his aggravated murder conviction is against the manifest weight of the evidence. Again, we disagree.
 {¶ 42} In determining whether a verdict is against the manifest of the evidence, we sit as a "thirteenth juror."Thompkins at 387. Thus, we review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. Id. Additionally, we determine "`whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Id., quoting State v. Martin (1983),20 Ohio App.3d 172, 175; see, also, Columbus v. Henry (1995),105 Ohio App.3d 545, 547-548. We reverse a conviction on manifest weight grounds for only the most "`exceptional case in which the evidence weighs heavily against the conviction.'" Thompkins at 387, quoting Martin at 175. Moreover, "`it is inappropriate for a reviewing court to interfere with factual findings of the trier of fact * * * unless the reviewing court finds that a reasonable juror could not find the testimony of the witness to be credible.'" State v. Brown, Franklin App. No. 02AP-11, 2002-Ohio-5345, at ¶ 10, quoting State v. Long (Feb. 6, 1997), Franklin App. No. 96APA04-511.
 {¶ 43} In arguing that his conviction is against the manifest weight of the evidence, appellant highlights discrepancies in the testimony from appellee's witnesses. In particular, appellant notes that: (1) Stephens testified that Knox exited the restaurant with two or three other people; (2) Storey testified that only he and the victim exited the restaurant; and (3) Hawthorne-Hill testified that the victim exited the restaurant alone.
 {¶ 44} As another example, appellant emphasizes that Stephens testified that, when Knox exited the restaurant, he did not stop, but was shot while walking away from the restaurant. However, appellant notes, Storey testified that Knox was standing outside the restaurant before the shooting.
 {¶ 45} Appellant raises another discrepancy by noting that Storey testified that he and Knox were already in the restaurant when appellant arrived and that appellant asked Knox to provide a phone number. However, appellant notes that Hawthorne-Hill testified that appellant was in the restaurant first and that Knox came in and approached appellant and asked him when he would repay a debt.
 {¶ 46} Lastly, appellant highlights that Storey testified that appellant stayed in the restaurant for some time after obtaining his food and before the shooting. However, appellant also indicates that Hawthorne-Hill testified that the events leading up to the shooting occurred quickly.
 {¶ 47} Regardless, we need not find that appellant's aggravated murder conviction with a firearm specification is against the manifest weight of the evidence from the above discrepancies. Such discrepancies are inconsequential given the unequivocal testimony that appellant shot Knox and given the unequivocal evidence establishing the elements of aggravated murder, which, in particular, entails a "prior calculation and design" demonstrated from the shooting occurring not from an instantaneous eruption of events inside the restaurant, but, rather, occurring after the initial interaction between appellant and Knox and after Knox had exited the restaurant. SeeWhitehead.
 {¶ 48} Next, in arguing that his aggravated murder conviction is against the manifest weight of the evidence, appellant emphasizes that Hawthorne-Hill testified that a man that accompanied appellant appeared shocked that the shooting occurred. According to appellant, such would not have been the case if appellant pre-planned the shooting in the restaurant before exiting. Thus, appellant argues, such evidence weighs against a finding that appellant committed aggravated murder by killing Knox with "prior calculation and design." However, we reject appellant's contentions given our above conclusion that the evidence does not demonstrate that appellant conspired with others to commit the aggravated murder and given the above-noted unequivocal evidence of "prior calculation and design" demonstrated from the sequence of events and appellant's own conduct during the incident. See Whitehead.
 {¶ 49} Accordingly, based on the above, we conclude that appellant's aggravated murder conviction with a firearm specification is not against the manifest weight of the evidence. Having already concluded that appellant's aggravated murder conviction with a firearm specification is not based on insufficient evidence, we overrule appellant's third assignment of error.
 {¶ 50} In his fourth assignment of error, appellant contends that the trial court erred by failing to give appellant's requested jury instructions from the Ohio Jury Instructions manual. We disagree.
 {¶ 51} Ordinarily, the trial court should give a requested jury instruction if it is a correct statement of law applicable to the facts and reasonable minds might reach the conclusion the instruction seeks. Murphy v. Carrollton Mfg. Co. (1991),61 Ohio St.3d 585, 591. However, "[t]he trial court need not give a proposed instruction in the precise language requested by its proponent, even if it properly states an applicable rule of law. The court retains discretion to use its own language to communicate the same legal principles." Youssef v. Parr, Inc.
(1990), 69 Ohio App.3d 679, 691. Such is the case even if the proposed instruction is from the Ohio Jury Instructions manual because "[t]he instructions found in Ohio Jury Instructions are not mandatory." State v. Martens (1993), 90 Ohio App.3d 338,343. Ultimately, we need not disturb a trial court's refusal to give a requested jury instruction absent an abuse of discretion.State v. Wolons (1989), 44 Ohio St.3d 64, 68.
 {¶ 52} Here, appellant requested that the trial court use the aggravated murder "prior calculation and design" definition from the Ohio Jury Instructions manual:
* * * "Prior calculation and design" means that the purpose to cause the (death) * * * was reached by a definite process of reasoning in advance of the homicide, which process of reasoning must have included a mental plan involving studied consideration of the method and the (means) (instrument) with which to cause the (death) * * *. To (constitute) (be) prior calculation, there must have been sufficient time and opportunity for the planning of an act of homicide, and the circumstances surrounding the homicide must show a scheme designed to carry out the calculated decision to cause the death. No definite period of time must elapse and no particular amount of consideration must be given, but acting on the spur of the moment or after momentary consideration of the purpose to cause the death is not sufficient.
4 Ohio Jury Instructions (2006) 121, Section 503.01(3).
 {¶ 53} The trial court refused and gave the following jury instruction on "prior calculation and design":
A person acts with prior calculation and design when, by engaging in a distinct process of reasoning, he forms a purpose to kill and plans the method he intends to use to cause death. The circumstances surrounding the homicide must show a scheme designed to carry out the calculated decision to cause the death. No definite period of time must elapse and no particular amount of consideration must be given, but acting on the spur of the moment or after momentary consideration of the purpose to cause the death is not sufficient.
(Tr. at 291.) In challenging the trial court's instruction on "prior calculation and design," appellant argues that his proposed instruction, and not the trial court's instruction, elaborated that "prior calculation and design" includes a "definite process of reasoning in advance of the homicide" and involves "sufficient time and opportunity for the planning of an act of homicide[.]"
 {¶ 54} However, the Ohio Supreme Court rejected a similar challenge in State v. Skatzes, 104 Ohio St.3d 195,2004-Ohio-6391. In Skatzes, a trial court gave a jury instruction on "prior calculation and design" identical to the one the trial court gave here. Id. at ¶ 71-73. Like here, the defendant argued that the trial court's jury instruction failed to inform the jury that "prior calculation and design" involved a "`process of reasoning'" that must be "in `advance of the homicide.'" Id. at ¶ 71. The Ohio Supreme Court disagreed and stated that "[a] clear reading of the instruction [given] indicates that the `distinct process of reasoning' must take place before the murder because the phrase `plans the method he intends to use' contemplates future action." Id. at ¶ 74. Thus, the Ohio Supreme Court concluded that the trial court's jury instruction was "adequate." Id.
 {¶ 55} Accordingly, here, under the rationale in Skatzes,
we conclude that the trial court did not abuse its discretion in rejecting appellant's jury instruction on "prior calculation and design" and, instead, providing the above-noted instruction. In so concluding, we further note that the trial court essentially exercised its discretion in using its own language to communicate the same legal principles appellant advanced in his proposed instruction. See Yousseff at 691.
 {¶ 56} Appellant also requested that the trial court use language from the Ohio Jury Instruction manual regarding when a jury may infer a purpose to cause death from a deadly weapon:
* * * If a wound is inflicted upon a person with a deadly weapon in a manner calculated to destroy life, the purpose to cause the death may be, but is not required to be, inferred from the use of the weapon. The inference, if made, is not conclusive.
4 Ohio Jury Instructions (2006) 120, Section 503.01(E).
 {¶ 57} The trial court refused and gave the following instruction:
If a wound is inflicted with a deadly weapon in a manner calculated to destroy life, the purpose to cause the death may be inferred from the use of the weapon, along with all the other facts and circumstances in evidence.
(Tr. at 292.)
 {¶ 58} In challenging the trial court's instruction on inferring purpose to cause death from a deadly weapon, appellant argues that his proposed instruction, and not the trial court's instruction, elaborated that a purpose to cause death "may be, but is not required to be," inferred from the use of a deadly weapon. Appellant also contends that his proposed instruction, and not the instruction that the trial court provided, elaborated that "[t]he inference, if made, is not conclusive."
 {¶ 59} The Ohio Supreme Court previously examined an essentially identical instruction on purpose to cause death from a deadly weapon that the trial court provided here, and the court recognized that the word "may" in the instruction indicates a permissive presumption that the jury could accept, but was not required to accept. State v. Getsy (1998), 84 Ohio St.3d 180,196. In this regard, under Getsy, we conclude that the trial court did not abuse its discretion in using the above-noted jury instruction and in rejecting appellant's proposed instruction. In so concluding, we further note that the trial court essentially exercised its discretion in using its own language to communicate the same legal principles that appellant advanced in the proposed instruction. See Yousseff at 691. Accordingly, based on the above, we overrule appellant's fourth assignment of error.
 {¶ 60} In summary, we overrule appellant's first, second, third, and fourth assignments of error. As such, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Petree and Sadler, JJ., concur.